THE STATE OF OHIO, APPELLEE, *v.* ROJAS, APPELLANT.

[Cite as *State v. Rojas* (1992), 64 Ohio St.3d 131.]

(No. 91–374—Submitted April 28, 1992—Decided July 1, 1992.)

134

" * * *

136

*Arthur M. Ney, Jr.,* Prosecuting Attorney, and *William E. Breyer,* for appellee.

*H. Fred Hoefle,* for appellant.

HERBERT R. BROWN, J.   R.C. 2929.05(A) requires a three-part analysis in capital cases.  First, we must review the judgment and consider Rojas' claims of error.  Second, we must independently weigh the evidence of aggravating circumstances and mitigating factors.  Third, we must decide whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases.  For the reasons set forth below, we affirm the convictions and uphold the sentence of death.

# I

## Constitutional Issues

In proposition of law No. I, Rojas (for convenience, we will refer to claims by counsel as being made by Rojas although he personally wishes to withdraw the appeal) argues that the federal and Ohio Constitutions prohibit the execution of mentally retarded defendants and that since he is mentally retarded, he cannot be executed. The arguments lack legal and factual merit.

The United States Supreme Court has held that the United States Constitution does not forbid imposing the death penalty on mentally impaired defendants:

" * * * [M]ental retardation is a factor that may well lessen a defendant's culpability for a capital offense. But we cannot conclude today that the Eighth Amendment precludes the execution of any mentally retarded person * * *. So long as sentencers can consider and give effect to mitigating evidence of mental retardation in imposing sentence, an individualized determination whether 'death is the appropriate punishment' can be made in each particular case. * * * " *Penry v. Lynaugh* (1989), 492 U.S. 302, 340, 109 S.Ct. 2934, 2958, 106 L.Ed.2d 256, 292.

Nor does the Ohio Constitution exempt one who has a low intelligence from capital punishment. Mental capacity may be a mitigating factor entitled to weight in Ohio's sentencing scheme. However, we do not find, in this case or from empirical evidence generally, that a fixed correlation can be made between a defendant's level of intelligence and a defendant's moral culpability.

We have upheld the death penalty where the defendant had a low level of intelligence. See *State v. Holloway* (1988), 38 Ohio St.3d 239, 245–246, 527 N.E.2d 831, 838; *State v. Jenkins* (1984), 15 Ohio St.3d 164, 15 OBR 311, 473 N.E.2d 264.

Moreover, the record does not indicate that Rojas was mentally retarded. In his unsworn statement, Rojas admitted that he intentionally did poorly in answering questions so he would appear to be retarded. His admission is corroborated by the conclusions of three expert witnesses.

Dr. Michael F. Hartings, a clinical psychologist, could not formally test Rojas' mental capacity because Rojas refused the test. However, Hartings, after five hours of interviewing Rojas, concluded that Rojas had an IQ between eighty and ninety and was not retarded. Dr. Donald G. Beal, a clinical psychologist, agreed that Rojas was in the dull normal range of intellectual functioning and not retarded. Dr. Glenn M. Weaver, a forensic

psychiatrist, noted that tests in Rojas' file indicated an IQ between sixty-seven and seventy-five, but he found Rojas functioning at a level of eighty-five to ninety. Hartings, Beal and Weaver all found that Rojas was malingering by making himself appear less intelligent than he is.

Dr. Robert Noelker, a clinical psychologist, and Mark Kroger, a counselling psychologist, found Rojas' intelligence to be at the lower end of the mildly retarded range. However, we agree with the trial court that the claims of Kroger and Noelker were not credible. The evidence of malingering seen by Hartings, Beal and Weaver is persuasive. Rojas worked successfully as a telephone operator. We find, as did the trial court, that Rojas' intelligence was above that of a retarded person. Thus, we reject Rojas' proposition of law No. I as unsupported in law or fact.

In proposition of law No. III, Rojas attacks the constitutionality of Ohio's death penalty statute by arguments we have previously rejected. *State v. Beuke* (1988), 38 Ohio St.3d 29, 38–39, 526 N.E.2d 274, 285. See, also, *State v. Bedford* (1988), 39 Ohio St.3d 122, 132, 529 N.E.2d 913, 923; *State v. Sowell* (1988), 39 Ohio St.3d 322, 336, 530 N.E.2d 1294, 1309. Moreover, Rojas did not raise the subparagraph B, C and G issues at trial and hence waived them. *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277, syllabus.

We also reject Rojas' propositions of law Nos. IV and V because we have previously sustained the constitutionality of Ohio's proportionality review. See *State v. Combs* (1991), 62 Ohio St.3d 278, 289, 581 N.E.2d 1071, 1080–1081; *State v. Beuke, supra,* 38 Ohio St.3d at 37, 526 N.E.2d at 283; *State v. Steffen* (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, paragraph one of the syllabus.

In proposition of law No. VI, Rojas urges an equal protection claim on the ground that persons convicted of the murder of whites are more likely to receive the death penalty than those convicted of killing blacks. The record provides no basis for the claim, and Rojas did not preserve the issue for review. Moreover, both the United States Supreme Court and this court have rejected this claim. See *McCleskey v. Kemp* (1987), 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262; *State v. Zuern* (1987), 32 Ohio St.3d 56, 512 N.E.2d 585, syllabus; *State v. Beuke, supra,* 38 Ohio St.3d at 37, 526 N.E.2d at 284.

## II

### *Guilt Phase Issues*

### Sufficiency of Evidence

In proposition of law No. VII, Rojas argues that the evidence was insufficient to sustain the charged aggravated robbery offenses (Counts V and VI)

as well as the death penalty specification alleging murder in the course of aggravated robbery. In his pretrial confession, Rojas admitted he took $25 from Becky's purse while in the apartment. However, Rojas now argues that he did so hours after he killed Becky; hence, no aggravated robbery occurred.

The state argues that a thief should not be rewarded because he commits his offense at a leisurely, methodical pace—killing his victim first and then stealing his property. We agree. In *State v. Smith* (1991), 61 Ohio St.3d 284, 290, 574 N.E.2d 510, 516, we noted:

" * * * [T]he victim of a robbery, killed just prior to the robber's carrying off her property, is nonetheless the victim of an aggravated robbery. The victim need not be alive at the time of asportation. A robber cannot avoid the effect of the felony-murder rule by first killing a victim, watching her die, and then stealing her property after the death. See *State v. Jester* (1987), 32 Ohio St.3d 147, 151–152, 512 N.E.2d 962, 968; *Conrad v. State* (1906), 75 Ohio St. 52, 78 N.E. 957."

In this case, the trial court reasonably could have found that the theft, or the intent to steal, occurred at the outset or during the one to three hours that Scott lived after being wounded. Rojas claims he stabbed Scott in the back at the outset, but no evidence exists as to when he stabbed her in the chest. Although Rojas claims that no evidence shows that he stabbed Scott with the intent of robbing her, he did steal from her. His intent to rob can be inferred from the fact that he did so. See *State v. Lockett* (1976), 49 Ohio St.2d 48, 3 O.O.3d 27, 358 N.E.2d 1062, reversed in part on other grounds, *Lockett v. Ohio* (1978), 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973.

Additionally, Rojas not only admitted he took the $25, he also thought about taking Scott's stereo, bloody clothing, and automobile, and he moved the stereo for that purpose. If Rojas intended to steal Scott's property while she was alive, the fact that he carried it away after she died is not crucial. See *State v. Durr* (1991), 58 Ohio St.3d 86, 93, 568 N.E.2d 674, 682; *State v. Smith, supra.*

In a review for sufficiency, the evidence must be considered in a light most favorable to the prosecution. *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Davis* (1988), 38 Ohio St.3d 361, 365, 528 N.E.2d 925, 930. The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts. *State v. Thomas* (1982), 70 Ohio St.2d 79, 24 O.O.3d 150, 434 N.E.2d 1356, syllabus; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph two of the syllabus. Here there was "substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven

beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus.

In proposition of law No. VIII, Rojas maintains that the evidence is insufficient to sustain convictions for rape and aggravated burglary. These claims lack merit.

In both pretrial statements, Rojas asserted that Scott was alive when he had intercourse with her. The physical evidence corroborates the act of intercourse. Police found Scott's nude body lying spread-eagled on the floor. The coroner found evidence of semen in her vagina and of saliva on her nipples. Additionally, the coroner estimated that Scott lived from one to three hours after the knife wounds were inflicted, and Rojas admitted she lived a couple of hours after he stabbed her. Thus, the evidence establishes that Rojas raped her and that she was then alive.

The evidence of aggravated burglary based upon Rojas' unlawful entry into Scott's apartment is also compelling. Although Rojas had previously been a guest, Scott rejected his request to meet at her apartment building. Rojas confessed that he hid outside Scott's apartment and confronted her, with a knife in his hand, when she opened the apartment door to go to their prearranged meeting. According to Rojas, Scott rejected his request to come into her apartment when he confronted her with the knife. Thus, the evidence sustains both the rape and aggravated burglary offenses charged against Rojas.

In proposition of law No. IX, Rojas asserts that the capital specifications alleging murder in the course of aggravated burglary, rape, and aggravated robbery were not proven. However, the evidence was sufficient to prove those offenses as discussed in propositions of law Nos. VII and VIII.

The evidence further established that Rojas killed Scott "while * * * [he] was committing, attempting to commit, or fleeing immediately after committing or attempting to commit * * * rape * * * aggravated robbery, or aggravated burglary * * *." R.C. 2929.04(A)(7). In construing comparable language, we have recognized that the term "while" does not mean "simultaneously with," but only "associated with" or "as a part of one continuous occurrence." *State v. Smith, supra,* 61 Ohio St.3d at 291, 574 N.E.2d at 517; *State v. Cooey* (1989), 46 Ohio St.3d 20, 23, 544 N.E.2d 895, 903. As we stated in *State v. Cooper* (1977), 52 Ohio St.2d 163, 179–180, 6 O.O.3d 377, 386, 370 N.E.2d 725, 736:

"The term 'while' does not indicate * * * that the killing must occur at the same instant as the attempted rape, or that the killing must have been caused by the attempt, but rather, indicates that the killing must be directly associated with the attempted rape as part of one continuous occurrence * * *."

## Coerced Confessions

In proposition of law No. X, Rojas argues that his pretrial statements were involuntary because the police promised to provide him psychiatric assistance but did not do so. Rojas did not raise this issue before the court of appeals and, thus, waived it. *State v. Williams* (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph two of the syllabus.

Moreover, the claim lacks merit. At a pretrial hearing on his motion to suppress, Rojas testified that he told Denver Detective Sergeant Russell and Cheviot Police Chief Voss that he wanted to talk with a psychiatrist. Rojas claims their promises to provide him assistance induced him to tell what happened. Admittedly, Rojas did not see a psychiatrist before he waived extradition and returned to Ohio. However, neither officer explicitly promised immediate psychiatric assistance, as Rojas claims.

After listening to the conflicting testimony of Rojas and Police Chief Voss and reviewing all the evidence, the trial court made these findings:

"The Court finds that the police did not induce a confession by either coercion or promise. In fact, the most favorable interpretation of the evidence for the defendant is his own statement at Page 20 of his interview with Chief Voss where defendant states, quote: You know the only reason why I'm telling you this is because my mom told me she said she'd stick by me and that she would keep the baby for me. She told me not to lie. She told me to tell everything about what happened, end of quote."

The evidence of record supports these trial court findings. Rojas was fully advised of his rights and claims no other alleged coercion or violation of rights. Accordingly, proposition of law No. X lacks merit.

## Effective Assistance of Appellate Counsel

In proposition of law No. XI, Rojas argues he did not receive the effective assistance of appellate counsel because counsel did not raise the issue of coerced confessions, as discussed in proposition of law No. X, before the court of appeals. This proposition lacks merit.

Rojas was entitled to the effective assistance of appellate counsel on a first criminal appeal as of right. *Evitts v. Lucey* (1985), 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821. Counsel must exercise reasonable professional judgment in presenting an appeal. See *Jones v. Barnes* (1983), 463 U.S. 745, 751, 103 S.Ct. 3308, 3312–3313, 77 L.Ed.2d 987, 993. On appeal, the two-prong *Strickland* standard applies. See *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Smith v. Murray* (1986), 477 U.S. 527, 535– 536, 106 S.Ct. 2661, 2667, 91 L.Ed.2d 434, 445; *State v. Watson* (1991), 61 Ohio St.3d 1, 16, 572 N.E.2d 97, 109–110.

However, appellate counsel performed adequately. The trial court's explicit findings demonstrate that the coerced confession issue had little merit. "This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. * * *" *Smith v. Murray, supra,* at 536, 106 S.Ct. at 2667, 91 L.Ed.2d at 445. Rojas failed to establish either part of the two-prong *Strickland* test, *i.e.,* deficient performance by counsel or prejudice to essential rights.

## III

### *Sentence Phase Issue*

### Trial Court Sentencing Error

In proposition of law No. II, Rojas argues the trial court improperly considered the nature and circumstances of the offense as a nonstatutory aggravating circumstance. However, the trial court's opinion precisely identified as aggravating circumstances the fact that the murder occurred in the course of an aggravated burglary, rape and aggravated robbery, and that Rojas was the principal offender. The opinion listed no other aggravating circumstances.

We reject Rojas' proposition. As we stated in *State v. Wiles* (1991), 59 Ohio St.3d 71, 90, 571 N.E.2d 97, 120:

"[W]here the court below correctly identifies the statutory aggravating circumstances pleaded and proven at trial, this court will infer that the trial court 'understood the difference between statutory aggravating circumstances and facts describing the nature and circumstances of the offense.' *State v. Sowell* (1988), 39 Ohio St.3d 322, 328, 530 N.E.2d 1294, 1302."

The trial court is required to review the nature and circumstances of the offense to determine if they are a possible mitigating factor. As we noted in *State v. Steffen, supra,* 31 Ohio St.3d at 117, 31 OBR at 278, 509 N.E.2d at 390, " * * * By its statement on the gruesome and vicious nature of the murder, the trial court herein was merely justifying its conclusion that no mitigating factors can be gleaned from the nature and circumstances of this particular offense." Moreover, a three-judge panel "may rely upon and cite the nature and circumstances of the offense as reasons supporting its finding that the aggravating circumstances were sufficient to outweigh the mitigating factors." *State v. Stumpf* (1987), 32 Ohio St.3d 95, 512 N.E.2d 598, paragraph one of the syllabus.

## IV

### *Our Independent Review*

We find beyond a reasonable doubt that Rojas killed Rebecca Scott in the course of rape, aggravated burglary, and aggravated robbery. In independently considering the death penalty and possible mitigating factors, we find that the nature and circumstances of the offense offer no mitigating features. Rojas acted with prior planning, calculation and design to trap Scott as she left her apartment. Then he attacked her without mercy or hesitation. After stabbing her, he did nothing to get her medical attention. He allowed her to bleed to death in her bedroom while he raped and robbed her.

Rojas' history and background do warrant some weight in mitigation. Rojas suffers from "substance abuse" and "borderline" personality disorders. The evidence at trial categorized these disorders as mental diseases or defects. The evidence also established that Rojas took amphetamines and may have been intoxicated at the time of the offenses. Little evidence was presented at trial about Rojas' upbringing. Rojas did have psychological problems.

In considering statutory mitigating factors, we find that the evidence does not suggest that Scott "induced or facilitated" the offense within the meaning of R.C. 2929.04(B)(1). Nor was Rojas under any "duress, coercion, or strong provocation[,]" as set forth in R.C. 2929.04(B)(2).

The evidence is conflicting as to whether, at the time of the offense, Rojas "lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law[.]" See R.C. 2929.04(B)(3). After considering the evidence, we conclude, as the trial court and court of appeals did, that this factor was not proved. The evidence does not support a conclusion that the defendant's criminal acts resulted from the defendant's low level of intelligence. However, we have considered his lower level of intelligence as mitigating, albeit of slight weight in this crime. The defendant's history and background are entitled, at most, to modest mitigating weight.

Rojas was twenty-seven at the time of the offense, which negates youth as a mitigating factor under R.C. 2929.04(B)(4), and his prior history negates the factor of lack of a significant criminal history under R.C. 2929.04(B)(5). No other actors were involved; hence, R.C. 2929.04(B)(6) is inapplicable.

As to R.C. 2929.04(B)(7), "other factors," Rojas expressed remorse and sorrow for the offenses at trial. Rojas also assisted the police and confessed to the crime. His remorse and assistance to the police are mitigating factors.

When weighed, the aggravating circumstances outweigh the mitigating factors. Rojas committed aggravated burglary, aggravated robbery and rape in his deliberate and calculated quest to kill Rebecca Scott.

In this case, we conclude that the death penalty is appropriate and proportionate when compared with similar aggravated murder cases. *State v. Franklin* (1991), 62 Ohio St.3d 118, 580 N.E.2d 1; *State v. Smith, supra; State v. Landrum* (1990), 53 Ohio St.3d 107, 559 N.E.2d 710; *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293; *State v. Henderson* (1988), 39 Ohio St.3d 24, 528 N.E.2d 1237; *State v. Van Hook* (1988), 39 Ohio St.3d 256, 530 N.E.2d 883; *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 514 N.E.2d 394; *State v. Steffen, supra.*

Accordingly, we affirm the convictions and sentence, including the death penalty.

*Judgment affirmed.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.