[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
Appellant Travis Thivener appeals his convictions in the Gallipolis Municipal Court for child endangerment in violation of R.C. 2919.22(B)(1) and violation of a temporary protection order. He raises two assignments of error:
 First Assignment of Error The Trial Court committed prejudicial error in finding Defendant-Appellant guilty of child abuse under Ohio Revised Code Section 2919.22(B)(1).
 Second Assignment of Error The Trial Court committed prejudicial error in finding Defendant-Appellant guilty of recklessly violating the Temporary Protection Order issued by the Court.
Finding no merit in either contention, we overrule both assignments of error.
Appellant was charged with one count of child endangerment in violation of R.C. 2919.22(B)(1), a first degree misdemeanor. At a hearing on May 10, 1999, the trial court issued a temporary protection order that instructed appellant not to contact the victim, Cody Sinclair, and to stay away from his residence at 9293 State Route 218. In two separate cases that were tried together, the court found appellant guilty of child endangerment in violation of R.C.2919.22(B)(1) and violating the temporary protection order. The convictions were based on the following facts.
In April 1999, Gallia County Children's Services ("GCCS") received a referral of alleged abuse involving eight-year-old Cody, appellant's stepson. Thomas Hopkins, an employee of GCCS, interviewed Cody the next day. Mr. Hopkins testified that Cody had bruises around each of his nipples that were two and one half to three inches in diameter. Mr. Hopkins photographed the injuries and the photographs were introduced into evidence.
Mr. Hopkins testified that Cody told him that he and appellant were wresting. Appellant then stated, "Do you know what's worse than a hurricane? A titty twister." Appellant then twisted Cody's nipples, causing the bruising. Mr. Hopkins also testified that Cody said the bruises hurt and caused him to cry. He further testified that appellant admitted to putting "titty twisters" on Cody and causing the bruising. On cross-examination, Mr. Hopkins testified that he did not seek medical treatment for Cody's injuries.
Mary Fellure, Cody's former teacher, testified to appellant's violation of the temporary protection order. Ms. Fellure testified that on May 11, 1998, Cody attempted to take the bus to a friend's home after school. However, because Cody normally walked home and lived only a short distance from the school, he was not allowed to board the bus. Cody became upset and said that he was going to run away. Consequently, Ms. Fellure walked Cody to his home on State Route 218 and was waiting outside the house with him when a car pulled into the driveway. Cody's mother and appellant exited the vehicle.
Ms. Fellure testified that appellant looked angrily at Cody and told him he was not to go to school and get into any more trouble. Appellant then went into the house with some groceries and Ms. Fellure returned to the school. When she arrive at the school, the Sheriff's Department was notified that appellant violated the temporary protection order.
Deputy Howard Mullins testified that he was dispatched to Angela Sinclair's residence in Mercerville in reference to a violation of a temporary protection order against appellant. When he arrived at the residence, Deputy Mullins was advised that Ms. Sinclar and appellant left in a vehicle and were possibly heading to a residence on Little Bullskin Road. When the deputy arrived at that residence, he arrested appellant.
In the defense case, Cody Sinclair testified that he remembered having little marks on his chest and someone from GCCS coming to speak with him. Cody testified that the red marks resulted from playing "titty twister" with appellant. Cody testified that they had played the game before, he liked playing the game and it doesn't hurt. Cody further testified that playing the game always leaves red marks but that he never told the GCCS representative that he didn't want to play, that he cried, or that it hurt. Cody also testified that he likes appellant and that appellant plays with him.
On cross-examination, Cody testified that he was nine years old. Cody also testified that appellant lives with him and always has. Appellant was living with Cody when school recessed and throughout the summer. Cody admitted telling Tom Hopkins that his chest hurt, but stated that he told Mr. Hopkins that he didn't cry. Cody testified that he never saw brown spots around his nipples, only red marks. Cody stated that he only played "titty twister" with appellant.
Lastly, appellant testified on his own behalf. Appellant testified that he wrestles and plays with Cody nearly every night and played "titty twister" with Cody but doesn't play it anymore. Appellant further testified that he didn't try to hurt Cody, that Cody never complained that he hurt, and that Cody didn't cry when they played.
Appellant testified that Cody and his sister were staying with friends for about a week because of the temporary protection order and riding the bus to school. Appellant further testified that when he and his wife pulled into the driveway on May 11, he took the groceries inside and then left on foot. Appellant testified that he did not expect the children to be at the home on that day.
On cross-examination, appellant testified that he wasn't living at 9293 State Route 218 because of the temporary protection order. He was staying at his parents' house, but would occasionally return to the State Route 218 home. Appellant testified that he believed that he could go to the house as long as Cody wasn't there. Appellant admitted that he interacted with Cody when he saw him at the house and that he wasn't supposed to be in contact with him.
Following a bench trial, the court orally found appellant guilty of child endangerment and violating the temporary protection order. The court sentenced appellant the same day and appellant timely appealed.
In his two assignments of error, appellant asserts that the trial court "committed prejudicial error" in finding him guilty of both charges. Appellant argues that the evidence produced by the state is insufficient to support the conviction for child endangerment and that the state failed to produce any evidence that appellant recklessly violated the terms of the temporary protection order.
Prior to addressing, the merits of this case, we must address our jurisdiction to review the conviction for the violation of the temporary protection order. In his notice of appeal, appellant attached only the judgment entry pertaining to the child endangerment conviction. Furthermore, there is no judgment entry finding appellant guilty of violating the temporary protection order in the record before us, though the trial court orally made such a finding following the trial.
Crim.R. 32(C) requires that a judgment of conviction set forth the plea, the verdict or findings, and the sentence. The judgment must be signed by the trial court and entered by the clerk. If the trial court's judgment does not comply with the requirements of Crim.R. 32, the judgment does not constitute a final appealable order.State v. Taylor (May 26, 1995), Adams App. No. 94CA585, unreported. It is axiomatic that the court speaks only through its journal entries. Id., citing State ex rel.Indus. Comm. v. Day (1940), 136 Ohio St. 477, paragraphs one and two of the syllabus. "In the absence of a signed journal entry reflecting the trial court's finding as to each charge, the order is `interlocutory.'" Id. As it appears that no final appealable order exists pertaining to appellant's conviction for violating the temporary protection order, we cannot address appellant's second assignment of error and dismiss that portion of the appeal on jurisdictional grounds.
We note, however, that the record reflects that each charge had a separate case number below and there is no evidence that the two cases were ever consolidated. Therefore, even though there is no final appealable order in the record regarding the violating of the temporary protection order, we are not precluded from addressing the conviction for child endangerment.[1]
In his first assignment of error, appellant asserts that the evidence does not support his conviction for child endangerment in violation of R.C. 2919.22(B)(1). "Sufficiency" of evidence refers to the legal standard applied to determine whether the case may go to the factfinder, i.e. whether the evidence is legally sufficient to support the guilty verdict as a matter of law. State v.Thompkins (1997), 78 Ohio St.3d 380, 386. This is a question of law which we review de novo. See id. In analyzing the "sufficiency" of evidence to sustain a criminal conviction, an appellate court must construe the evidence in a light most favorable to the prosecution.State v. Hill (1996), 75 Ohio St.3d 195, 205; State v. Grant
(1993), 67 Ohio St.3d 465, 477; State v. Rojas (1992),64 Ohio St.3d 131, 139. After construing the evidence in this manner, the test for determining the sufficiency is whether any rational trier of fact considering the evidence could have found all essential elements of the charged offense proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2919.22(B) states:
 No person shall do any of the following to a child under eighteen years of age * * *.
(1) Abuse the child;
* * *
To establish a violation of R.C. 2919.22(B)(1), the state must prove, beyond a reasonable doubt: (1) that the child is under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age; (2) an affirmative act of abuse (State v. Kamel (1984), 12 Ohio St.3d 306,307) and; (3) which is perpetrated with heedless indifference to the consequences of the action (R.C.2901.22(C)). State v. Bogan (June 14, 1990), Montgomery App. No. 11920, unreported. Appellant concedes that the state proved that Cody was under age eighteen, but argues that the state failed to prove that he committed an act of abuse and that he acted recklessly.
"Child abuse" is not specifically defined in R.C.2919.22. The accompanying Legislative Service Commission comments indicate that an act which causes or poses a serious risk to the mental or physical health or safety of a child is child abuse. Cf. Committee Comments to R.C.2919.22. Serious physical harm to persons is defined under R.C. 2901.01(A)(5) as follows:
 (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;
 (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement;
 (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain.
Substantial risk is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).
After having reviewed the record and considering the standard of "serious physical injury" as stated above, we find that a rational trier of fact could conclude that Cody received serious physical harm or at least was at substantial risk of such harm. The photographs of Cody's chest show numerous severe bruises around the nipples. The bruising depicted could certainly be inferred to create pain that would be unbearable or nearly so to an eight-year-old. Furthermore, Cody admitted telling Mr. Hopkins that his chest hurt and, though Cody denied it, Mr. Hopkins testified that Cody said he cried due to the injuries. While bruising alone is insufficient to establish abuse, In re Schuerman
(1991), 74 Ohio App.3d 528, 532, the testimony along with the photographs of the horrible bruises on Cody's chest are sufficient to establish substantial harm or risk thereof constituting abuse.
Appellant also argues that the state presented no evidence that he acted recklessly. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." State v. Burdine-Justice 
(1998), 125 Ohio App.3d 707, 715.
Appellant admitted to playing "titty twisters" with Cody. Appellant also conceded that Cody came home from school with red marks on his chest but appellant played the game with him anyway. While appellant testified that he did not intend to harm Cody, the state was not required to prove intent. There is clearly a known risk that when one pinches or twists a young boy's skin and nipples, one is likely to cause bruising and possibly bleeding. Furthermore, appellant's testimony establishes that he knew that Cody's chest was already sore before he began playing with him. Therefore, there is certainly enough evidence in the record to support the trial court's finding that appellant acted recklessly.
In sum, a sufficiency of the evidence analysis is a question of law that does not allow courts to independently weigh the evidence. State v. Martin (1983), 20 Ohio App.3d 172,175. Accordingly, our inquiry is not whether the testimony should have been believed but, rather, whether it would support a conviction if believed by the trier of fact. See State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). Construing the evidence most favorably to the prosecution, the testimony and evidence established all the elements of the charge of child endangerment. The evidence was legally sufficient, leaving it up to the trial court to decide whether it was credible. Therefore, appellant's first assignment of error is overruled.
Having addressed both assignments of error, we affirm the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Gallipolis Municipal Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment Opinion, Evans, J.: Dissents with Attached Dissenting Opinion.
 ___________________________ William H. Harsha, Judge
[1] As already noted, a judgment of conviction must set forth the plea, the verdict or findings, and the sentence. Crim.R. 32(C). The judgment entry of conviction for child endangerment does not include appellant's not guilty plea but does indicate that he was found guilty by the trial court based on the evidence. Furthermore, a review of the record indicates that appellant pled not guilty and that the case proceeded to trial. Therefore, we find that the trial court substantially complied with the requirements of Crim.R. 32(C) as pertains to the child endangerment conviction. See State v. Perrine (April 29, 1997), Holmes App. No. CA-565, unreported (holding that court's failure to include plea in the judgment entry not fatal to jurisdiction where clear from the record that appellant pled not guilty and was found guilty after trial)