This is an appeal from a judgment of conviction and sentence entered by the Vinton County Court, upon a bench trial, finding Vernon Jenkins, defendant below and appellant herein, guilty of one (1) count of obstructing official business, in violation of R.C. 2921.31, one (1) count of disorderly conduct, in violation of R.C. 2917.11 (A) (4), and two (2) counts of aggravated menacing in violation of R.C. 2903.21. The following errors are assigned for our review:
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ITS FINDING DEFENDANT-APPELLANT GUILTY OF OBSTRUCTING OFFICIAL BUSINESS IN THAT THE COURT STATED BEFORE TRIAL THAT IT HAD NO JURISDICTION TO DETERMINE THAT THE ROAD IN QUESTION WAS A TOWNSHIP ROAD OR A PRIVATE ROAD AND THERE WAS NO EVIDENCE PRESENTED THAT THE ROAD IN QUESTION WAS ACTUALLY A TOWNSHIP ROAD NOR WAS THERE SUFFICIENT EVIDENCE PRESENTED THAT DEFENDANT-APPELLANT HAD OBSTRUCTED OFFICIAL BUSINESS."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN ITS FINDING DEFENDANT-APPELLANT GUILTY OF DISORDERLY CONDUCT IN THAT THE COURT STATED BEFORE TRIAL THAT IT HAD NO JURISDICTION TO DETERMINE THAT THE ROAD IN QUESTION WAS A TOWNSHIP ROAD OR A PRIVATE ROAD AND THERE WAS NO EVIDENCE PRESENTED THAT THE ROAD IN QUESTION WAS ACTUALLY A TOWNSHIP ROAD."
THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT AS THE FINDINGS OF GUILTY ARE CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
A brief summary of the facts pertinent to the cause sub judice is as follows. Appellant owns a tract of land in Eagle Township, Vinton County, Ohio. A roadway known as "Riddle Road" runs through that property.[1] This is not a particularly well maintained thoroughfare and, over the years, the precise course of the roadway has come under dispute. Specifically, as the road winds its way up and over a hill on the property, then veers to the left and then curves back to its original position. Appellant maintains that this curve was in fact a "logging road" constructed by timber companies that were clearing trees and wanted to avoid brush which had grown over the true roadway. There are others, however, who regard the curve as having always been part of Riddle Road.[2] In any event, appellant took it upon himself to clear brush from what he believed was the true course of the road (at an expense of $5,000) and then block others from trespassing over the curve onto what he regarded as his own private property.
During the weekend of August 22-23, 1998, appellant had several confrontations with would be travelers over the disputed portion of the roadway. First, James Clary (an Eagle Township Trustee) and a couple of workers showed up attempting "to do some road maintenance" (i.e. grading, cleaning ditches and laying down gravel) on Riddle Road. As they came up the hill on appellant's property and approached the curve, a tractor blocked their progress. Appellant refused to move the vehicle and told Clary that this portion of the roadway was actually his land and that Clary would not be permitted to grade this portion of the roadway. Clary acquiesced and took the grader and maintenance crew back down the hill, off the property, and notified authorities.
That same weekend, a group of motorcyclists went through this portion of the roadway as well. Appellant and his ex-son in-law, Dwight Ross, were working in the vicinity and attempted to stop them. They told the cyclists that the township road had been redirected and "was over there now." The cyclists refused to follow their directions, however, and allegedly ran over appellant and kicked Ross as they proceeded through the curve of the roadway. Appellant thereafter borrowed a gun to ensure that he would not be "run over" by any trespassers.
One of the motorcyclists, James Wills, returned later that evening with a friend, Rodney Amerine. Wills and Amerine drove up Riddle Road in a jeep. A truck blocked their access to the disputed curve in the roadway, however. Appellant then told Wills and Amerine that this area was private property. An argument ensued as to whether the curve was indeed private property or whether it is part of the township right-of-way. Eventually, appellant brandished his gun. The events that followed were hotly disputed at trial, but Amerine and Wills asserted that appellant pointed the gun in their face(s) and threatened to shoot them. Appellant claimed, on the other hand, that he drew the gun only after Wills and Amerine threatened to run him over again. Appellant further testified that he pointed his weapon at the ground during the entire incident and did not, at any time, aim it at Wills or Amerine. In any event, Wills and Amerine withdrew from the scene and returned back down the hill.
A criminal complaint was filed in the court below on September 4, 1998 charging appellant with obstructing official business (in regard to the incident involving Mr. Clary and the road maintenance crew), disorderly conduct (in regard to his blocking access to the disputed curve in the roadway) and two (2) counts of aggravated menacing (in regard to the incidents with Messrs. Amerine and Wills). Appellant pled not guilty to all counts and the matter proceeded to a bench trial over several days in July and August of 1999.
At the outset of trial, the trial court acknowledged that it did not possess jurisdiction to determine the precise location of the roadway.[3] Nevertheless, considerable evidence was adduced by both sides addressing that very issue. Clary and his fellow Trustees, James Winnett and Jack Vanover, all testified that Riddle Road curved to the left on appellant's property and that the disputed curve was part of the township right-of-way. Appellant argued, however, that the disputed curve was in fact his land and that he had cleared brush from the actual course of the roadway which went straight ahead rather than curving. Because the curve was not part of the road, appellant reasoned, his denial of access to Clary or to the general public did not impede their travel over the true course of Riddle Road. He also denied that he had threatened Amerine and Wills and testified that they had, instead, threatened to run over him and that he had pulled his gun (and aimed it at the ground) because he felt his own safety was in danger. The trial court apparently was not swayed by appellant's version of events and ruled from the bench finding him guilty on all four (4) counts in the complaint.
Judgment of conviction and sentence was entered on December 13, 1999, imposing sixty (60) days in jail and a $250 fine for obstruction of official business, one hundred eighty (180) days in jail and a $500 fine on each of the two aggravated menacing charges and a $100 fine for disorderly conduct. The jail sentences were ordered to be served consecutively but were then suspended and appellant was placed on two (2) years probation and ordered to perform community service. This appeal followed.
 I
We shall jointly consider the first and second assignments of error wherein appellant argues that his convictions for obstructing official business and disorderly conduct should be reversed. We agree, albeit for different reasons than are advanced in his brief.
The State's brief cites us to "newly discovered evidence" in the form of a survey conducted of the disputed area after the trial below. This survey, a copy of which is included as an exhibit in the State's brief, shows that appellant was correct in his assertion that the disputed curve in the roadway was not part of the true road. Indeed, according to that survey, the actual course of Riddle Road is completely different from that of the "existing traveled road" on the property. The State takes the position that this survey has a direct impact on appellant's guilt for obstructing official business and disorderly conduct and should be considered by the trial court. It is therefore requested that we "remand" these charges to the trial court for reconsideration. While highly unusual, the State's request will be granted and appellant's conviction will be reversed on these two (2) charges.
Nevertheless, we attach several caveats to that disposition. First, the survey cited by the State and included as an exhibit in its brief is not part of the record on appeal and has not been considered by us in resolving this matter.[4] Our decision is based, instead, on what is essentially a stipulated reversal by the State of Ohio. This sort of stipulation is unusual but, in the interests of justice and considering the particular facts and circumstances in the cause sub judice, we will accept the State's recommendation that the convictions on these two (2) charges be reversed. That being said, we point out that this Court has not addressed and does not decide the issue of whether appellant could still be found guilty of obstructing official business or disorderly conduct even if he was not blocking the actual course of the road as delineated by the survey.[5] We also do not address the issue of whether the course of Riddle Road may have changed over time to include the disputed curve as a result of open and continuous use by the public for more than twenty-one (21) years.[6] Our decision, as aforesaid, is based entirely on the State's stipulation that this matter be remanded to the trial court for further consideration. With that in mind, the first and second assignments of error are sustained.
 II
Appellant's third assignment of error is somewhat confusing. The actual body of the assignment of error posits that the trial court's "findings of guilty" are contrary to law and "against the manifest weight of the evidence." However, in the body of the accompanying argument, he contends that the State failed to prove him guilty by "sufficient" evidence. Suffice it to say that there is a distinct difference between a "sufficiency of the evidence" challenge and a "manifest weight of the evidence" challenge. SeeState v. Johnson (2000), 88 Ohio St.3d 95, 112, 723 N.E.2d 1054,1070; State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, at paragraph two of the syllabus; State v. Schaim (1992),65 Ohio St.3d 51, 53, 600 N.E.2d 661, 664, at fn. 1. Given that it is unclear which argument appellant means to make here, we will apply both of them to the convictions at issue.[7]
In a review for sufficiency, appellate courts construe the evidence in a light most favorable to the prosecution. See Statev. Hill (1996), 75 Ohio St.3d 195, 205, 661 N.E.2d 1068, 1079;State v. Grant (1993), 67 Ohio St.3d 465, 477, 620 N.E.2d 50, 64
— 65; State v. Rojas (1992), 64 Ohio St.3d 131, 139,592 N.E.2d 1376, 1384. The relevant inquiry then is whether a reasonable jury considering that evidence so construed could have found all essential elements of the crime beyond a reasonable doubt. See State v. Ballew (1996), 76 Ohio St.3d 244, 249,667 N.E.2d 369, 376; State v. Loza (1994), 71 Ohio St.3d 61, 68,641 N.E.2d 1082, 1095-1096; State v. Richey (1992), 64 Ohio St.3d 353,364, 595 N.E.2d 915, 925. Appellant was charged with two (2) counts of aggravated menacing in violation of R.C. 2903.21. That statute provides that no person shall knowingly cause another to believe that the offender will cause serious physical harm to that person. Id. at (A). Both Wills and Amerine testified to the effect that appellant pointed a gun in their faces, that he threatened to kill them and that they feared for their lives. This evidence was sufficient, if believed by the trier of fact, for the trial court to find appellant guilty of aggravated menacing.
Appellant counter argues that Wills and Amerine's testimony "were fraught with inconsistencies." He further argues that he never threatened them and that he had the gun with him solely to protect his own safety. We are not persuaded. It is axiomatic that weight of the evidence and the credibility of the witnesses were issues to be determined by the trial court as trier of fact. See State v. Dye (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763,768; State v. Frazier (1995), 73 Ohio St.3d 323, 339,652 N.E.2d 1000, 1014; State v. Williams (1995), 73 Ohio St.3d 153, 165,652 N.E.2d 721, 732. As such, the trial court was free to believe all, part or none of the testimony of each witness who appeared before it. See State v. 713 N.E.2d 1, 5; State v. 619 N.E.2d 80,88; State 63, 577 N.E.2d 1144, 114 do, apparently gave more testimony than it did to trial court's province. position than this court their demeanor, gestures observations in weighing testimony. See Myers v. Garson (1993), 66 Ohio St.3d 610, 615,614 N.E.2d 742, 745; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273, 1276. Thus, we find that the prosecution witnesses' testimony was sufficient for the trial court to find appellant guilty and we will not second guess its determinations as to issues of credibility.
Appellant's claim that the guilty verdicts were against the manifest weight of the evidence is also unavailing. In reviewing such a claim, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Earle (1997),120 Ohio App.3d 457, 473, 698 N.E.2d 440, 450; State v. Garrow
(1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814, 816; Statev. Davis (1988), 49 Ohio App.3d 109, 113, 550 N.E.2d 966, 969. Again, given the testimony of Wills and Amerine, we are not persuaded that there has been a manifest miscarriage of justice in this case. The trial court simply believed the State's witnesses on this point rather than those proffered by the defense. For these reasons, the third assignment of error is overruled.
Having sustained appellant's first and second assignments of error, as was requested by the State of Ohio, the judgment below is affirmed in part, reversed in part and the case is remanded for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is hereby ordered that the judgment be affirmed in part, reversed in part and the case be remanded for further proceedings with appellant to recover of appellee costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Vinton County Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment Opinion For the Court
____________________________ Peter B. Abele, Judge
[1] The roadway is also identified at various places in the materials before us as either Township Road 13, Township Road 13B or Township Road 13E. We will refer to it simply as "Riddle Road" in order to avoid confusion.
[2] The area of land encompassed by this curve was described below as 200-250 feet.
[3] County courts typically have very limited jurisdiction in real estate matters. See R.C. 1907.04 (F) and 1907.05.
[4] Appellate courts are precluded by App.R. 12 (A) from considering exhibits attached to a brief that were not made a part of the trial court record. See State v. Lytle (Mar. 10, 1997), Ross App. No. 96CA2182, unreported; State v. Runkle (Dec. 17, 1996), Vinton App. No. 95CA500, unreported; State v. Estep (Jun. 26, 1995), Ross App. No. 94CA2007, unreported.
[5] The Supreme Court in State v. Pembaur (1984), 9 Ohio St.3d 136,459 N.E.2d 217, at the syllabus, held that" [a]bsent bad faith on the part of a law enforcement officer, an occupant of business premises cannot obstruct the officer in the discharge of his duty, whether or not the officer's actions are lawful under the circumstances." (Emphasis added.) The Court reasoned that, given the tone and tenor of modern society, it would be better to resolve questions concerning the legality of official conduct in the courts, through peaceful means, rather than on the street in a potentially violent confrontation. Id. at 138,459 N.E.2d at 219. We parenthetically note that R.C. 2921.31 does not require the State to prove that the actual course of Riddle Road went through the curve on appellant's property and, thus, we leave to another day the issue of whether appellant still violated the statute despite Clary's (apparent) good faith belief that he was tending to the actual course of the roadway.
[6] Vanover testified below that, during the twenty-one (21) years he had been a township trustee, Riddle Road had always occupied the same location on appellant's property. This would appear to be corroborated by testimony from one of appellant's own witnesses, Joyce Mink, who recalled that the road "split through the left for the last twenty years or so."
[7] Appellant also does not specify whether this assignment of error is directed at all of the charges with which he was found guilty or any of them individually. However, considering that we have already reversed his convictions for obstruction of official business and disorderly conduct, we need only consider these arguments in light of the convictions for aggravated menacing.