DECISION
On September 27, 2001, pursuant to App.R. 26(B), defendant-appellant, Kimberly Kendall, has filed an application to reopen her appeal and the judgment of this court rendered in State v. Kendall (June 29, 2001), Franklin App. No. 00AP-1098. On appeal, this court affirmed the judgment of conviction and sentence of the Franklin County Court of Common Pleas on three counts of rape, in violation of R.C. 2907.02, and one count of felonious sexual penetration, in violation of former R.C. 2907.12.
In her application for reopening, defendant contends her court-appointed appellate counsel was ineffective in failing to have prepared a full transcript of the trial court proceedings. Defendant moved this court to "stay" her App.R. 26(B) application until the remainder of the trial court proceedings could be transcribed and her new appellate counsel could review the transcript and prepare assignments of error. On December 12, 2001, this court granted defendant time to procure the complete transcript.
Defendant subsequently filed the transcript of the August 4, 2000 sentencing and sexual predator determination hearing on which she premises the following two assignments of error:
 1. THE TRIAL COURT'S DESIGNATION OF MS. KENDALL AS A SEXUAL PREDATOR VIOLATED HER RIGHT TO DUE PROCESS BECAUSE IT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 2. THE TRIAL COURT FAILED TO SATISFY THE STATUTORY REQUIREMENTS FOR IMPOSING A CONSECUTIVE SENTENCE. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT.
A criminal defendant is entitled to effective assistance of appellate counsel on a first appeal as of right. Evitts v. Lucey (1985),469 U.S. 387, 105 S.Ct. 830; State v. Rojas (1992), 64 Ohio St.3d 131,141. "An application for reopening shall be granted if there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). To justify reopening her appeal, defendant bears the burden of establishing that there was a genuine issue as to whether she has a colorable claim of ineffective assistance of counsel on appeal. State v. Hooks (2001), 92 Ohio St.3d 83,84; State v. Spivey (1998), 84 Ohio St.3d 24, 25.
The two-pronged analysis found in Strickland v. Washington (1984),466 U.S. 668, 687, 104 S.Ct. 2052, is the appropriate standard to assess whether defendant here has raised a "genuine issue" as to the ineffectiveness of her appellate counsel. Hooks, supra. Under Strickland, applied here, defendant must prove that her appellate counsel was deficient for failing to raise the issues she now presents and that there was a reasonable probability of success had those claims been presented on appeal. Hooks, supra; State v. Bradley (1989),42 Ohio St.3d 136.
The trial court record supporting defendant's conviction is summarized in this court's opinion in Kendall:
 According to state's evidence, on October 28, 1999, defendant's daughter, Amber Mansperger, was hit by a truck, requiring Amber be taken to a hospital. While she was at the hospital, Amber revealed to a nurse she had been molested.
 As the evidence revealed, during the summer of 1994, Amber lived with defendant, defendant's boyfriend, Richard Rowland, her sister, Pamela, her brother, Roger, and her sister, Krista. Rowland began molesting Amber when she was eight years of age; defendant began to participate sometime later. Amber testified that at approximately 9:30 one morning, defendant came into her room and said, "let's go into the bedroom and make Dick put Dick into a good mood." (Tr. 48.) Amber followed her mother into the bedroom, not knowing what was to ensue. Rowland was lying asleep on the bed. Defendant shut and locked the door, and pulled the sheet off Rowland who was naked. Defendant started to perform oral sex on Rowland, telling Amber to watch. Amber tried to leave the room, but was not tall enough to reach the lock on the door. Defendant then told Amber to do what she just did. Amber performed oral sex on Rowland, and then "made [herself] get sick." (Tr. 52.) Defendant opened the door and let Amber go back to her bedroom.
 On another occasion, while Amber lay in her bed, defendant asked her to watch a movie in defendant's room. Amber complied. After watching the movie for approximately one-half hour, defendant pulled out a magazine that showed pictures of people having sex. Defendant asked Amber to look at the magazine so Amber "would know how to do it when [she] got older." (Tr. 60.) Amber refused. Defendant next put a rubber penis in her mouth and told Amber to watch. Defendant then obtained an egg-shaped metal object with a string and a box attached. When Amber got up to go to the bathroom, defendant pulled down Amber's pants, inserted the object into Amber's vagina, and turned on the control box. Amber testified that it hurt and made her bleed. She removed the object and threw it against a mirror.
 Krista, defendant's oldest daughter, testified that in July 1997, "my mom came and asked me to lose my virginity to Dick and she wanted me to have a baby with him because she could not have any kids and she wanted to have a baby to raise." (Tr. 131.) Krista refused. Defendant did not press the issue.
 Toward the end of July 1997, Rowland called Krista into the bedroom; Krista stated that this was not unusual. Rowland also called defendant into the bedroom. Defendant came in, shut the door, locked it, and stood in front of the door. Rowland told Krista "[she] was going to have sex with him whether [she] liked it or not." (Tr. 132-133.) Krista said no, and looked to defendant who said, "better do what he says." Although others were in the house at the time, she did not yell for help because she was afraid, Rowland having told her if she yelled or tried to fight him he would kill her. Rowland then forced Krista onto the bed. Defendant held Krista's arms down while Rowland raped Krista.
 Krista testified that on another occasion defendant came into her room and told her "to go deal with your father." (Tr. 137.) Krista understood the statement to mean she should have sex with Rowland. Krista went into the room and was ordered to remove her clothes. Rowland told her to lay on the bed. Defendant came over, laid on the bed beside Krista and fondled Krista's breasts and vagina. Krista was crying and telling defendant to stop. Rowland told Krista to touch defendant like she was touching Krista. Krista refused. Rowland became angry, told defendant to leave the room, and said, "I'll deal with the little bitch myself." (Tr. 139.) He then raped Krista. Krista testified Rowland raped her two to three times a week. Although defendant did not participate, she would often retrieve Krista to have sex with Rowland.
 Testimony indicated Rowland was a violent man who physically abused defendant. Both Amber and Krista were afraid to tell anyone about the incidents because Rowland threatened he would kill them if they did. Rowland had guns in the house, and he carried a knife with him.
On those facts, the trial court conducted a sexual predator hearing and found defendant to be a sexual predator. Defendant contends appellate counsel was ineffective in failing to assign as error the trial court's sexual predator determination.
In order for defendant to be designated a sexual predator, the state was required to prove by clear and convincing evidence that defendant had been convicted of a sexually oriented offense and that she is likely to engage in the future in one or more sexually oriented offenses. R.C.2950.01(E) and 2950.09(B)(4); State v. Eppinger (2001), 91 Ohio St.3d 158,163. "Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." Id. at 164, quoting Cross v. Ledford (1954), 61 Ohio St. 469,477. There is no dispute here that defendant has been convicted of a sexually oriented offense. However, defendant contends the evidence is insufficient to show she is likely to engage in future sexually oriented offenses.
R.C. Chapter 2950 is not meant to punish a defendant, but instead to protect the safety and general welfare of the people of this state. Eppinger at 165. The issue presented to the court at a sexual offender classification hearing is not whether the offender is particularly deserving of punishment, but whether the defendant is likely to commit future sexually oriented offenses. Id. at 166.
The factors listed in former R.C. 2950.09(B)(2) are guidelines that provide a framework to assist judges in determining whether a defendant, who committed a sexually oriented offense, is a sexual predator. While the guidelines are designed to provide consistency in the judicial reasoning process, they do not control a judge's discretion. State v. Thompson (2001), 92 Ohio St.3d 584, 587. Former R.C. 2950.09(B)(2) required the court to consider the factors listed but did not direct the court what weight, if any, it must assign to each factor. Because determining recidivism is at best an imperfect science, and while the guidelines set forth potentially relevant factors, some may not be applicable in every case. Id. at 588. Moreover, the guidelines did not provide an exclusive list of factors to consider when determining whether an offender is a sexual offender. Id.
At the August 4, 2000 hearing, the trial court, after hearing arguments of counsel, found that defendant is a sexual predator, specifically noting (1) the ages of the victims [former R.C. 2950.09(B)(2)(c)], (2) the number of victims [former R.C. 2950.09(B)(2)(d)], and (3) the nature of the offenses committed [former R.C. 2950.09(B)(2)(h)].
That this case involves multiple victims of tender age is not disputed. Moreover, the trial court rejected defense counsel's characterization of the nature of defendant's sexual conduct as being largely or entirely the result of an abusive relationship with her boyfriend, and of physical injuries as minimum or nonexistent. The trial court noted defendant's conviction on felonious sexual penetration, a crime that involved physical injury to Amber when Rowland was not around. The record shows the trial court appropriately weighed the evidence, applied the factors of former R.C. 2950.09(B)(2), and rejected defendant's characterization of the nature of her offenses. The record amply supports the trial court's determination that, by clear and convincing evidence, defendant is a sexual predator. See State v. Belton (Apr. 16, 2002), Franklin App. No. 01AP-980 (a reviewing court should not reweigh the evidence).
Defendant's reliance upon State v. Ward (1999), 130 Ohio App.3d 551 is misplaced. In that case, the defendant had pleaded guilty in 1994 to one count of attempted felonious sexual penetration of a person under 13 years of age. In 1997, the state filed a motion seeking to have the defendant declared a sexual predator. The court convened a hearing at which the defendant stipulated to the facts of the underlying case — that it involved digital penetration of a five-year-old victim along with a threat to kill the victim if she told anyone what he had done. The state submitted as its only exhibit a certified copy of the conviction. Thereafter, the court entered a sentencing addendum finding the defendant to be a sexual predator.
While the Eighth District Court of Appeals in Ward found error in the trial court's sexual predator determination, in State v. Griffin (2000),140 Ohio App.3d 433, it distinguished Ward because Ward involved a single sexually oriented offense; by contrast, the defendant in Griffin was convicted of multiple sexually oriented offenses charged in one indictment. Defendant here did not commit a single sexually oriented offense, but four sexually oriented offenses against two minor victims over a time period beginning in mid-1994 and ending in 1997. That defendant's convictions resulted from a single trial of a multi-count indictment does not "reduce this pattern of behavior to a single offense." Griffin at 443.
Because defendant's challenge to the trial court's sexual predator determination lacks merit, defendant was not deprived of effective assistance of appellate counsel for failing to raise the issue in defendant's direct appeal.
Defendant's second assignment of error on her motion to reopen her appeal contends the trial court failed to satisfy the statutory requirements for imposing a consecutive sentence.
Former R.C. 2929.14(E)(4) provided:
 If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
Former R.C. 2929.19(B)(2) provided:
 The court shall impose a sentence and shall make a finding that gives its reasons for selecting the sentence imposed in any of the following circumstances:
* * *
 (c) If it imposes consecutive sentences under section 2929.14 of the Revised Code, its reasons for imposing the consecutive sentences[.]
In State v. Jones (2001), 93 Ohio St.3d 391, the defendant was convicted of four counts of gross sexual imposition. Two victims were involved, with two counts pertaining to each victim. The trial court specified that the prison term for Count 1 of the indictment was to be served consecutively to the prison terms for the other three counts. The trial court explained that it was attempting to have the prison terms relating to one victim served consecutively to the prison terms relating to the other victim. Id. at 398-399.
Citing the above noted statutes, the Jones court wrote:
 With regard to the trial court's imposition of consecutive sentences, the court of appeals found that "the trial court gave no reason whatsoever." This statement is in error. The trial court indicated that the consecutive sentences were imposed in order to take into account that appellee had committed similar crimes against two victims. This is clearly related to the seriousness of appellee's conduct and the likelihood that he will offend again in the future, both of which are factors to support consecutive sentences according to R.C. 2929.14(E)(4). The trial court should have been given the opportunity to explain its reasons for imposing this sentence, but the court of appeals again substituted its judgment for that of the trial court's[.] [Id. at 400.]
The Jones court vacated the modified sentence imposed by the court of appeals and remanded the cause to the trial court for resentencing.
Here, as in Jones, the trial court at least inferred at the sentencing hearing that it was imposing a consecutive sentence to punish defendant for the crimes against two victims. As the Jones court noted, that two victims were involved is clearly related to the seriousness of the defendant's conduct and the likelihood that the defendant will offend again in the future, both of which are factors to support consecutive sentences according to former R.C. 2929.14(E)(4). Nevertheless, the trial court must comply with the statutory requirements of former R.C.2929.14(E)(4)(b) and 2929.19(B)(2)(c). See State v. Toops (Aug. 16, 2001), Franklin App. No. 00AP-1451.
The state suggests that because defendant received life sentences on two counts, "the sentence the court made consecutive had no practical effect on defendant's sentence." Contrary to the state's contention, with two concurrent life sentences, defendant becomes eligible for parole after serving a term of 10 full years of imprisonment. R.C. 2967.13. The nine-year definite sentence to be served consecutively to the concurrent life sentences substantially postpones the parole eligibility date. See R.C. 2967.13. Accordingly, defendant has presented a colorable claim of ineffective assistance of appellate counsel in counsel's failure to raise the lack of requisite statutory findings in the trial court's sentence.
For the foregoing reasons, we grant defendant's September 27, 2001 App.R. 26(B) application for reopening her appeal, but only on the issue of consecutive sentencing imposed in the trial court.
Motion for reopening appeal granted in part.
BROWN, J., and TYACK, P.J., concur.