DECISION AND JUDGMENT ENTRY
{¶ 1} Brian Hardie appeals the Washington County Common Pleas Court Juvenile Division's decision finding him to be a delinquent child by reason of having committed attempted rape and gross sexual imposition. Hardie contends that the attempted rape adjudication is against the sufficiency of the evidence because the state failed to prove that his actions were a substantial step that, if successful, would have resulted in a rape. In addition, Hardie contends that both adjudications are against the manifest weight of the evidence. Viewing the evidence in a light most favorable to the prosecution, we conclude that there is sufficient evidence to allow the case to be submitted to the trier of fact. However, we find the attempted rape adjudication to be against the manifest weight of the evidence. As for the gross sexual imposition adjudication, we find that the state presented substantial evidence from which the juvenile court could properly determine that Hardie was delinquent by reason of gross sexual imposition.
 {¶ 2} In May 2002, Hardie and a female student were sitting together on the school bus in their assigned seat. The two students had previously dated but had broken up in January of 2002. According to the female student, the following events occurred while they were on the bus. On May 15, 2002, Hardie grabbed her breasts and attempted to place his hands underneath her shirt. She told him to quit and struggled to remove his hands. The next day, he did the same thing. This time, however, he also placed his hand down her pants in an attempt to "finger her", i.e. place his fingers in her vagina. She again told him to quit and struggled to remove his hand from her pants. After she succeeded in removing his hand, the two got into an argument. During the argument, Hardie complained that she had "let other guys" and asked why he was any different.
 {¶ 3} Two days after the first incident, the female student reported the events to school authorities. The school authorities called the sheriff's department and reported the student's complaint. Deputy Sheriff Alkire went to the high school to investigate the complaint. While at the school, Deputy Alkire spoke with Hardie. Hardie stated that he had touched the student's belly and knee and that his hand may have brushed her breast, but he denied grabbing her breasts and putting his hand down her pants. After speaking to everyone involved, Deputy Alkire took Hardie into custody. On May 20, 2002, the state charged Hardie with delinquency in connection with attempted rape and gross sexual imposition.
 {¶ 4} After a one day hearing, the juvenile court adjudicated Hardie a delinquent child on both counts. At the dispositional hearing, the court ordered Hardie committed for a minimum of six months on the gross sexual imposition charge and a minimum of twelve months on the attempted rape charge. The court then proceeded to suspend the twelve-month commitment for attempted rape. Hardie appeals the juvenile court's delinquency finding, raising the following assignments of error: "ASSIGNMENT OF ERROR NO. 1 — The trial court violated Brian Hardie's right to due process under the Fifth andFourteenth Amendments to the United States Constitution, Article I, Section 16 of the Ohio Constitution, and Juv. R. 29(E)(4) when it adjudicated him delinquent of attempted rape absent proof of every element of the charge against him by sufficient, competent, and credible evidence. ASSIGNMENT OF ERROR NO. 2
— The trial court violated Brian Hardie's right to due process under the Fifth andFourteenth Amendments to the United States Constitution
and Article I, Section 16 of the Ohio Constitution when it adjudicated him delinquent of attempted rape and gross sexual imposition when that finding was against the manifest weight of the evidence."
 {¶ 5} In his first assignment of error, Hardie contends that there is insufficient evidence to support the juvenile court's finding that he is delinquent by reason of attempted rape. Hardie argues that the state failed to prove that his act of placing his hand in the victim's pants was a substantial step that, if successful, would have resulted in a rape. In addition, Hardie argues that the state failed to prove that his purpose in placing his hand in the victim's pants was to penetrate her vagina.
 {¶ 6} The state argues that Hardie has waived his argument as to the sufficiency of the evidence since he failed to make a Crim. R. 29 motion for acquittal at the close of the state's case.[1] The failure to raise a sufficiency argument at trial does not waive that argument on appeal. State v. Jones, 91 Ohio St.3d 335, 346, 2001-Ohio-57,744 N.E.2d 1163; State v. Casto, Washington App. No. 01CA25, 2002-Ohio-6255, at ¶ 9; See also State v. Carter, 64 Ohio St.3d 218,1992-Ohio-127, 594 N.E.2d 595. A defendant preserves his right to object to the alleged insufficiency of the evidence when he enters his "not guilty" plea. Jones; Casto. Thus, we find that Hardie has not waived his sufficiency of the evidence argument despite his failure to make a Crim. R. 29 motion for acquittal. Moreover, a conviction based on insufficient evidence would almost always amount to plain error. See,State v. Arrowood (Sept. 27, 1993), Pike App. No. 93CA505.
 {¶ 7} A trial court may enter a finding of delinquency when the evidence demonstrates, beyond a reasonable doubt, that the child committed an act that would have constituted a crime if committed by an adult. R.C. 2151.35(A); Juv. R. 29(E)(4). Thus, when reviewing the sufficiency of the evidence in a juvenile context, we apply the same standard of review applicable to criminal convictions. See In re Watson
(1989), 47 Ohio St.3d 86, 91, 548 N.E.2d 210. An appellate court's function when reviewing the sufficiency of the evidence is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks (1991) 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citingJackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
 {¶ 8} The juvenile court found Hardie delinquent by reason of attempted rape. R.C. 2907.02(A)(2), which defines rape states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." Sexual conduct is defined as "* * * without privilege to do so, the insertion, however slight, of any part of the body * * * into the vaginal or anal cavity of another." R.C. 2907.01(A). Under R.C. 2923.02(A) a person is guilty of an attempt to commit a crime if he "purposely or knowingly * * * engage[s] in conduct that, if successful, would constitute or result in the offense."
 {¶ 9} The Ohio Supreme Court has held that a criminal attempt occurs when the offender commits an act constituting a substantial step towards the commission of an offense. State v. Woods (1976),48 Ohio St.2d 127, 357 N.E.2d 1059, paragraph one of the syllabus, overruled in part by State v. Downs (1977), 51 Ohio St.2d 47,364 N.E.2d 1140. In defining substantial step, the Woods Court indicated that the act need not be the last proximate act prior to the commission of the offense. Woods at 131-32. However, the act "must be strongly corroborative of the actor's criminal purpose." Id. at paragraph one of the syllabus. Thus, to convict Hardie of attempted rape, the state had to prove that his placing his hand in the victim's pants was a substantial step toward rape, i.e. the forceful penetration of the victim's vagina with his finger.
 {¶ 10} At the hearing, the victim testified that Hardie tried to put his hand down her pants in an attempt to "finger her". Although he did not actually place his finger in her vagina, he had his hand in her pants up to his knuckles. She testified that she told him to quit and attempted to physically remove his hand but that he fought to keep his hand down her pants. Eventually, she succeeded in removing his hand and an argument ensued. She testified that during the argument, Hardie stated that she has "let other guys, why is he any different?" When asked if Hardie specified what she let other guys do, she responded "I've let other guys finger me." The victim also testified that Hardie threatened to "get somebody after" her if she told anybody. However, on cross-examination, the victim stated that this threat occurred a month or two before the present incident. Moreover, in her statement to school authorities, the victim stated that prior to putting his hand down her pants, Hardie asked if he could finger her. On cross-examination, however, she testified that he asked her this on a prior occasion, not on May 15th or 16th.
 {¶ 11} In addition to the victim's testimony, the state presented the testimony of two students who rode the same school bus as Hardie and the victim. When asked if she saw anything on the 15th or 16th of May, one student testified that she saw Hardie and the victim arguing. However, she could not hear what they were arguing about. On re-direct, the student testified that she also saw Hardie trying to put his hands down the victim's pants. However, the student could not remember what day she saw this incident.
 {¶ 12} The second student testified that in May 2002, she saw Hardie "touching [the victim] and everything, and trying to force his hands down her pants." She testified that she saw Hardie's fingers in the victim's pants and the victim struggling to remove them. The student testified that Hardie tried to "finger" the victim. When asked what made her believe that Hardie tried to "finger" the victim, the student responded "him trying to put his hands down her pants." The student also heard the argument that occurred after the victim succeeded in removing Hardie's hands. She testified that she heard Hardie say that "he's just like every other guy, she lets all these other guys do it, why not him."
 {¶ 13} Both the victim and the second student testified that Hardie had his hand in the victim's pants. Hardie argues that his act of placing his hand in the victim's pants was not a substantial step toward rape because he did not touch the victim's underwear or vaginal area. However, a substantial step need not be the last proximate act prior to the commission of the offense. Woods, 48 Ohio St.2d at 131-32. In addition, Hardie argues that the state failed to prove that he intended to penetrate the victim's vagina when he placed his hand in her pants.
 {¶ 14} When asked why she thought Hardie was trying to penetrate her vagina, the victim replied that "usually when a guy goes down there, that's what he's trying to do." In addition, the second student testified that Hardie tried to finger the victim. When asked what made her believe that, she replied "[h]im trying to put his hands down her pants." While these statements amount to nothing more than speculation about Hardie's purpose, the victim and student also testified about a statement Hardie made after the victim removed his hands from her pants. Both the victim and the student testified that after the victim removed Hardie's hands, he said that the victim has "let other guys, why not him."
 {¶ 15} Hardie's act of placing his hand in the victim's pants, followed by his comment that she has "let other guys" does not rise to the level of attempted rape. There is nothing in this conduct that clearly indicates an intent to penetrate the victim's vagina as opposed to an intent to touch her pubic area or simply place his hands down her pants. However, Hardie's conduct must be considered in connection with the victim's subsequent testimony. When asked if Hardie specified what she has let other guys do, the victim answered "I've let other guys finger me." We have considered this statement and conclude that it can be read in one of two ways. The victim could be restating what Hardie said on the bus. If this is the case, then Hardie's additional comment indicates that his intent was to penetrate the victim's vagina. However, this statement could also be read as an admission on the victim's part. The victim could be admitting her past actions in an attempt to explain what Hardie meant when he said that she "has let other guys." If this is the case, then the only insight we have into Hardie's intent is his statement that the victim "has let other guys, why not him." As stated above, this statement is insufficient to indicate an intent to commit rape.
 {¶ 16} Because we are reviewing the sufficiency of the evidence, we must view the evidence in a light most favorable to the prosecution. Thus, we must read the victim's statement, "I've let other guys finger me", as evidence of what Hardie said. Reading the victim's statement in this manner, we conclude that a rational trier of fact could find the essential elements of attempted rape proven beyond a reasonable doubt. Accordingly, Hardie's first assignment of error is overruled.
 {¶ 17} In his second assignment of error, Hardie contends that his delinquency adjudications for attempted rape and gross sexual imposition are against the manifest weight of the evidence.
 {¶ 18} The legal concepts of sufficiency and weight of the evidence are different. State v. Thompkins, 78 Ohio St.3d 380, 386,1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. Therefore, even though we have already addressed the sufficiency of the evidence, it is still necessary to address the weight of the evidence because it is possible that the evidence may be legally sufficient to go to the jury, yet be so logically unpersuasive that it cannot support a conviction. SeeState v. Robinson (1955), 162 Ohio St. 486, 487, 124 N.E.2d 148.
 {¶ 19} Our function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. Thompkins, 78 Ohio St.3d at 387. In order to undertake this review, we must sit as a "thirteenth juror" and review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. Id., citingState v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. If we find that the fact finder clearly lost its way, we must reverse the conviction and order a new trial. Id. We will not reverse a conviction so long as the state presented substantial evidence for a reasonable trier of fact to conclude that all of the essential elements of the offense were established beyond a reasonable doubt. State v. Getsy,84 Ohio St.3d 180, 193-94, 1998-Ohio-533, 702 N.E.2d 866. We are also guided by the presumption that the trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony." Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80, 461 N.E.2d 1273.
 {¶ 20} The juvenile court found Hardie to be delinquent by reason of gross sexual imposition in violation of R.C. 2907.05(A)(1).[2]
R.C. 2907.05(A)(1) prohibits an individual from "having sexual contact with another, not the spouse of the offender * * * when any of the following applies: (1) The offender purposely compels the other person * * * to submit by force or threat of force." Sexual contact is defined as "any touching of an erogenous zone of another, including without limitation the * * * pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." R.C. 2907.01(B).
 {¶ 21} The victim testified that she used to date Hardie but that they broke up in January of 2002. She testified that the two shared an assigned seat on the school bus. A couple of months after they broke up, Hardie began grabbing her breasts while they were on the school bus. Specifically, she testified that he grabbed her breasts on May 15th and 16th. According to her testimony, he grabbed her breasts from both above and beneath her shirt. She told him to quit and tried to pull his hands away from her chest, but he would not remove his hands.
 {¶ 22} In addition, a fellow student testified that in May 2002, she saw Hardie grab the victim's breasts while they were on the school bus. Moreover, she testified that she witnessed this on more than one occasion. According to the student, the victim told Hardie to stop. Another student, who sat across the aisle from Hardie and the victim, testified that she saw Hardie grab the victim's breasts "like every other day." However, she did not see him grab the victim's breasts on May 15th and 16th.
 {¶ 23} While Hardie did not testify at the hearing, Deputy Alkire testified to his conversation with Hardie. According to Deputy Alkire, Hardie stated that he may have brushed the victim's breast with his hand. Hardie told Deputy Alkire that somebody looking from a side view might have construed that as him grabbing the victim's breast.
 {¶ 24} We are mindful that questions of witness credibility are primarily the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. The victim testified that Hardie grabbed her breasts despite her efforts to push his hands away. Another student testified that she saw Hardie grabbing the victim's breasts and the victim squirming and telling him to stop. After reviewing the evidence, we are not persuaded that the juvenile court lost its way or created a manifest miscarriage of justice when it found Hardie delinquent for gross sexual imposition. There exists substantial evidence upon which the court could reasonably conclude that all the elements of gross sexual imposition were established beyond a reasonable doubt.
 {¶ 25} In addition to challenging his adjudication for gross sexual imposition, Hardie contends that his adjudication for attempted rape is against the manifest weight of the evidence. In order to prove Hardie committed attempted rape, the state must show that Hardie engaged in conduct that, if successful, would result in the forceful penetration of the victim's vagina. See R.C. 2923.02(A), R.C. 2907.02(A)(2), and R.C. 2907.01(A).
 {¶ 26} Initially, we note that Hardie has engaged in a pattern of reprehensible conduct. Without question, Hardie committed various acts that would constitute a crime if committed by an adult. Furthermore, the victim should be commended for notifying the authorities and for participating in the trial court proceeding. After an examination of the evidence adduced during the trial court proceeding, however, we believe that the critical issue that we must decide is precisely what offense(s) did Hardie commit?
 {¶ 27} In order to commit the offense of attempted rape, the prosecution must prove, inter alia, that Hardie intended to penetrate the victim's vagina, however slight, when he forcibly placed his hand in the victim's pants (approximately one inch below the victim's beltline). In support of this assertion, the victim testified that: (1) Hardie "tried to go down and finger me"; (2) "usually when a guy goes down there, that's what he's trying to do"; (3) "he told me I've let other guys, why is he any different?" The victim further testified that on previous occasions, Hardie had asked to "finger her," although Hardie did not make this request at or near the time that he committed the acts in question. Another prosecution witness testified that she overheard Hardie complain to the victim the "she lets all these other guys do it, why not him?" The witness further explained that her interpretation of the term "do it," as used in this particular context, meant to "finger her [victim] and every other thing like that."
 {¶ 28} In 1970, the United States Supreme Court held that the "beyond a reasonable doubt" standard of proof must be applied in juvenile delinquency cases. In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068,25 L.Ed.2d 368. In the case sub judice, we believe that the evidence relating to the attempted rape offense failed to satisfy the reasonable doubt standard. The evidence on which the prosecution relies to establish Hardie's intent consists of the victim's subjective belief and a witness' subjective belief that Hardie intended to penetrate the victim's vagina. While we readily concede that this was a distinct possibility, we are not prepared, based upon the evidence presented, or more accurately based upon the lack of evidence presented on this point, to conclude that the prosecution has proved Hardie's intent to penetrate beyond a reasonable doubt. We fully recognize that certain elements of a crime, such as the element of intent, often can only be established by circumstantial evidence. Because an accused's intent exists only in his or her mind and is not ascertainable by another, intent cannot be proven by the direct testimony of another person but must be determined from the surrounding facts and circumstances. State v. Seiber (1990), 56 Ohio St.3d 4,564 N.E.2d 408. Thus, the intent to do or to commit a particular act may be inferred from the doing of the act. State v. Rojas, 64 Ohio St.3d 131,1992-Ohio-110, 592 N.E.2d 1376. Furthermore, we readily concede that appellate courts should defer to the trier of fact on matters of witness credibility. In the instant case, however, witness credibility is not the issue. Instead, we believe that the evidence, when accepted as true, falls short of the evidence required to prove the elements of attempted rape. We do not believe, after our review of the surrounding facts and circumstances, that the prosecution proved beyond a reasonable doubt Hardie's intent to penetrate the victim at the time in question. Here, Hardie's purpose may have been to commit another crime, such as gross sexual imposition, rather than the crime of rape.
 {¶ 29} The state attaches great significance to (1) Hardie's statement, made after the victim removed his hand from her beltline, that she "has let other guys, why not him," and (2) the victim's statement that she had permitted "other guys to finger me." Thus, the state argues that Hardie's act of placing his hand in the beltline of the victim's pants, when considered in connection with his statement, provides a sufficient basis on which to infer that Hardie intended to penetrate the victim's vagina. Although we understand this position and we, in fact, again note that this outcome was, in all probability, Hardie's goal, we are not prepared to conclude that the evidence proves beyond a reasonable doubt that Hardie's purpose or intent was to penetrate the victim. We believe, however, that the evidence establishes that Hardie did intend to commit some other criminal offense, such as gross sexual imposition which requires forcible touching of the pubic area, but not penetration.
 {¶ 30} Other courts have had the opportunity to discuss the quality of evidence necessary to establish the elements of the crime of attempted rape. In State v. Powell (1990), 49 Ohio St.3d 255, 552 N.E.2d 191, cert. den. 498 U.S. 882, 111 S.Ct. 229, 112 L.Ed.2d 183, the Ohio Supreme Court noted that the fact that the defendant ordered a seven-year-old child to remove her clothes strongly corroborated the defendant's criminal purpose to engage in sexual conduct and does constitute a substantial step in a course of conduct planned to culminate in the commission of the crime. The defendant argued that his acts could have been a step in a course of conduct planned to culminate in an offense other than rape. The court rejected this argument and held that the defendant's confession that he planned to have sexual intercourse with the child showed (1) the defendant's purpose to have sex with the child and (2) an act (ordering her to remove her clothes) that strongly corroborated that purpose. In the case sub judice, however, we find no such confession or statement by Hardie or any other evidence that establishes or clarifies Hardie's purpose or intent at the time he committed the offense. Hardie's oblique reference to the victim permitting other guys to "do it," without a precise explanation as to what exactly "it" refers to, inadequately, in our view, establishes Hardie's purpose or intent to penetrate the victim.
 {¶ 31} Additionally, in State v. Henish (1990), 50 Ohio St.3d 231,239, 553 N.E.2d 1026, 1035, the Ohio Supreme Court wrote: "The attempted rape conviction, was of course, based wholly upon circumstantial evidence. We held in State v. Woods (1976), 48 Ohio St.2d 127,2 O.O.3d 289, 357 N.E.2d 1059, paragraph one of the syllabus, vacated on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3133, 57 L.Ed.2d 1153, that conduct must be `strongly corroborative of the actor's criminal purpose' in order `to constitute a substantial step' toward the act. We went on to state that `* * * this standard does properly direct attention to overt acts of the defendant which convincingly demonstrate a firm purpose to commit a crime * * *.' (Emphasis added.) Id. at 132, 2 O.O.3d at 292,357 N.E.2d at 1063. In the instant case, the evidence promoted as indicative of an attempted rape cannot be separated from evidence that is merely residual to the underlying crime of murder. This is not evidence by itself sufficient to reach the threshold of a separate crime of attempted rape as opposed to gross sexual imposition. Evidence of finding the victim's body in the condition noted above does not allow the fact-finder to conclude beyond a reasonable doubt that an attempted rape has occurred." Thus, in order to establish the crime of attempted rape rather than the crime of gross sexual imposition, a defendant's overt acts must convincingly demonstrate a firm purpose to commit the rape offense. In other words, sufficient evidence must be presented to allow the fact finder to conclude beyond a reasonable doubt that a defendant intended to commit the crime of attempted rape rather than another criminal offense.
 {¶ 32} Our view on this matter should not be construed as criticism directed at the prosecution or the trial court. The evidence adduced below presents a very close issue with respect to Hardie's intent or purpose. Additionally, it appears from our review of the trial transcript that the victim's trial testimony differed slightly from the written statement that the victim provided on the date of the event in question. In her written statement, the victim stated that Hardie had informed her the he wanted to "finger her." This statement gives the appearance that Hardie's statement concerning his intent or purpose was contemporaneous with the events in question. At trial, however, the victim, much to her credit, candidly and honestly acknowledged that Hardie did not utter this statement at or near the time that he committed the offenses. Thus, it appears that the evidence adduced at trial varied slightly from the statements obtained during the investigation.
 {¶ 33} While we have expressed our belief that the evidence adduced below does not sufficiently establish Hardie's purpose or intent to commit the offense of attempted rape, we have no doubt that Hardie intended to forcibly touch the victim's pelvic region. Thus, we conclude that the evidence establishes the elements of the offense of attempted gross sexual imposition rather than the offense of attempted rape. Accordingly, we (1) affirm the trial court's judgment with respect to the first count for gross sexual imposition; and (2) reverse the trial court's judgment with respect to the attempted rape offense and modify this judgment to reflect a delinquency adjudication for the offense of attempted gross sexual imposition.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT ACCORDINGLY.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND CAUSE REMANDED WITH INSTRUCTIONS TO ENTER JUDGMENT ACCORDINGLY, and that Appellee and Appellant shall equally divide costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Evans, P.J. Abele, J.: Concur in Judgment and Opinion.
Harsha, J.: Concurs in the Disposition of the First Assignment of Error and Part of the Second Assignment of Error, but Dissents from the Holding that the Adjudication of Attempted Rape is Against the Manifest Weight of the Evidence.
[1] After the state rested its case, Hardie's counsel indicated that he was not going to present any evidence. The court took a fifteen-minute recess and then proceeded to closing arguments.
[2] We note that the complaint, delinquency entry, and dispositional entry identify Hardie's gross sexual imposition offense as R.C. 2907.05(A)(4). However, the description of events in the complaint describes an offense under R.C. 2907.05(A)(1). At trial, both parties proceeded as if under R.C. 2907.05(A)(1). Moreover, both parties briefed the issue as if under R.C. 2907.05(A)(1). Thus, we will address the issue as if the court found Hardie delinquent of gross sexual imposition under R.C. 2907.05(A)(1).