OPINION
{¶ 1} Defendant-appellant/cross-appellee Kevin Calwise appeals his conviction in the Mahoning County Common Pleas Court. Calwise was convicted of three counts of aggravated murder, one count of aggravated robbery, and one count of attempted aggravated murder. This court is asked to decide four issues. First, whether the trial court erred by failing to suppress Calwise's video statement. Second, whether the verdicts are against the manifest weight of the evidence. Third, whether the state provided sufficient evidence to prove the crimes charged. Lastly, whether the trial court abused its discretion by allowing Calwise to open and close final arguments in the penalty phase of the proceedings. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} On the night of November 8, 1999, Anthony Anderson asked Calwise if he wanted to "hit a lick," i.e. rob Wadell Casey, a known drug dealer. Calwise agreed to participate in the robbery. Anderson and Calwise obtained a .38 caliber revolver from Jamar Prieto to use in robbing Casey. (Tr. 400; State's Exhibit 31). Prieto then drove Anderson and Calwise to Casey's home. (Tr. 400; State's Exhibit 31). When Calwise and Anderson arrived at Casey's house, Casey was not there. (Tr. 412). Instead Casey's girlfriend, Lashawnda Aziz and her two infant children DeShun and Brea were present. Lashawnda, DeShun and Brea were living with Casey. Lashawnda was five months pregnant with Casey's child. (Tr. 59). Anderson knew Lashawnda was pregnant. (Tr. 59).
 {¶ 3} Anderson and Calwise entered Casey's house with loaded guns. Events transpired at the house resulting in massive injuries to Brea and the death of Lashawnda, her unborn child and DeShun. Brea suffered three gunshot wounds to the face, one wound to the back of her neck and one wound to her hand. (Tr. 259). Lashawnda was shot twice in the head by Anderson. (Tr. 335). One of the gunshot wounds was fatal. (Tr. 340). She also had bruises on her chest, forehead and left arm. (Tr. 325). Lashawnda's unborn child died as result of her death. (Tr. 342, 343). DeShun suffered three gunshot wounds to the head. (Tr. 346.) DeShun died as a result of these gunshot wounds.
 {¶ 4} Calwise admits that he shot one of the three shots fired at DeShun. (Tr. 432; State's Exhibit 31). Calwise stated that Anderson shot DeShun once, and then he instructed Calwise to shoot DeShun. Calwise stated that the only reason he shot the child was because he was afraid that Anderson would kill him if he did not shoot. (Tr. 431-432; State's Exhibit 31). Calwise further claims that DeShun was dead when he shot him. Casey's house was ransacked and money and a Glock gun were taken from the house. Anderson gave Calwise $1,000 for his part in the incident. (Tr. 442).
 {¶ 5} Shortly after the incident occurred, Calwise was indicted for three counts of aggravated murder, one count of attempted aggravated murder, and one count of aggravated robbery. The aggravated murder charges contained firearm and death penalty specifications.
 {¶ 6} On April 20, 1999 (four months after legal counsel had been appointed), Calwise contacted Detective Morales of the Youngstown Police Department and informed Morales that he wished to speak with him, and that he did not want his attorneys present during the conversation. Morales then contacted County Prosecutor Tim Franken about whether he could speak with Calwise without the presence of defendant's legal counsel. After receiving an affirmative response, the detective spoke with Calwise which led to a video statement and a re-enactment at the crime scene.
 {¶ 7} Prior to trial, Calwise moved to suppress the video statement and re-enactment which was denied by the trial court. Thereafter, the case proceeded to trial. Calwise was found guilty of three counts of aggravated murder, one count of attempted aggravated murder, one count of aggravated robbery and five counts of firearm specifications.
 {¶ 8} The case proceeded to the mitigation hearing. At the mitigation hearing, Calwise presented four witnesses. After their testimony, Calwise gave an opening-closing argument. The state then gave its closing argument. Then the trial court allowed Calwise to give a final closing argument. The jury returned a recommendation that Calwise receive life imprisonment without parole for each of the three counts of aggravated murder. The trial court followed the jury's recommendation and sentenced Calwise to serve three life terms without the possibility of parole. Calwise also was sentenced to 10 years for the attempted aggravated murder of Brea and 10 years for aggravated robbery. He received three years for each of the firearm specifications; however, two of the firearm specifications were merged. The trial court ordered the sentences to be served consecutively.
 {¶ 9} Calwise untimely appealed his conviction. However, upon motion to allow for a delayed appeal, this court allowed the appeal to proceed. The state then filed a notice to cross-appeal claiming error in allowing Calwise to have two closing arguments.
 ASSIGNMENT OF ERROR NO. ONE {¶ 10} "Appellant was denied a fair trial when the trial court abused its discretion and overruled a motion to suppress his statement contrary to the protections of the fifth and sixth amendments to the United States Constitution."
 STANDARD OF REVIEW {¶ 11} Our standard of review with respect to a motion to suppress is limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288, citing Tallmadge v. McCoy (1994),96 Ohio App.3d 604, 608. Such a standard of review is appropriate because "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of the trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v.Hopfer (1996), 112 Ohio App.3d 521, 548, quoting State v. Venham (1994),96 Ohio App.3d 649, 653. However, once we have accepted those facts as true, we must independently determine as a mater of law whether the trial court met the applicable legal standard. State v. Williams (1993),86 Ohio App.3d 37, 41.
 ANALYSIS {¶ 12} It is constitutionally fundamental that criminal defendants have a right to an attorney, and the right to have an attorney present during questioning. Once a request has been made for counsel, all questioning must cease, and law enforcement officers should not seek to reinitiate questioning absent the presence of counsel for the defendant.Edwards v. Arizona (1981), 451 U.S. 477, 481. The reason for this rule is a desire to prevent police from badgering a defendant into waiving his or her previously asserted Miranda rights. State v. Santini,144 Ohio App.3d 396, 2001-Ohio-3313, citing Minnick v. Mississippi
(1990), 498 U.S. 146, 150. However, a limited exception exists to this general rule. Santini, 2001-Ohio-3313. That is, if the accused initiates further communication, exchanges, or conversations with the police, it is not necessary for counsel to be present during such occurrences. Statev. Raglin (1998), 83 Ohio St.3d 253, 262, citing Edwards, supra at 484-485. Accordingly, when questioning occurs between law enforcement officials and a defendant after the defendant has exercised his or her right to counsel, the relevant inquiry is whether law enforcement officials were responsible for initiating the questioning or whether the defendant was responsible. Santini, supra, citing Minnick, supra.
 {¶ 13} Here, it is undisputed that Calwise initiated the conversation with Morales. (Tr. 107-109, 449; State's Exhibit 31). It is also undisputed that Calwise told Morales that he did not want his attorneys present during the conversation. (Tr. 107-109, 449-450; State's Exhibit 31). Also, Morales and Calwise both testified that Calwise was not promised anything for the statement. (Tr. 107-109, 450, State's Exhibit 31). Given the uncontroverted testimony, we can only conclude that the requisite factors for the exception contemplated by Santini andRaglin have been met. Accordingly, if an accused "knowingly and intelligently" communicates with a police officer after counsel has been appointed, and the accused states that he does not wish to have his counsel present during the conversation, there is no reason to exclude the uncounseled statements from trial. See Patterson v. Illinois (1998),487 U.S. 285, 291. As such, the conversation between Calwise and law enforcement officials did not result in a violation of Calwise's rights.
 {¶ 14} Calwise, however, argues that his situation is different because he told Morales that he wished to speak only to him. (Tr. 107-109). He points to the fact that when the conversation between Morales and Calwise occurred, two other officers, Detective Jerry Maietta and Captain Kane, were in the room and asked some questions. (10/26/99 Supp. Hrg. Tr. 10). This claimed distinction evaporates since Calwise effectively waived the right to assert it by stating in his video statement to the police that it was all right for the other officers to be in the room. He cannot acquiesce then and claim error now.
 {¶ 15} Calwise also argues that Morales should have called his attorneys before speaking with him alone. This argument is based on the fact that Morales called Prosecutor Franken prior to the conversation with Calwise. The call by Morales to Prosecutor Franken was to determine if he was permitted to talk to Calwise without the presence of attorneys without violating Calwise's constitutional rights. This is consistent with the special relationship of a prosecutor with the police investigating a crime. A prosecutor is the legal arm of the police and it is in the best interests of the prosecutor that evidence be obtained legally so that it can be admitted at trial. Therefore, communication between a prosecutor and a detective as to the actions that the detective may take within the parameters of a criminal's rights should be encouraged to ensure that the rights of the accused are not violated, and that evidence is obtained legally. Furthermore, the detective was not required to call the prosecutor before he spoke with Calwise. Similarly, there is no requirement that once an accused initiates a conversation between himself and the police, the police must call the accused's attorney. As such, the trial court did not error by denying the motion to suppress. This assignment of error is without merit.
 ASSIGNMENT OF ERROR NOS. TWO AND FOUR {¶ 16} "The trial court denied appellant due process under theFourteenth Amendment due to the fact his convictions were against the manifest weight of the evidence and the jury's verdict was inconsistent with the evidence and testimony presented at trial."
 {¶ 17} "Appellant's conviction for aggravated murder in purposely causing the unlawful termination of Lashawnda Aziz's pregnancy in count three of the indictment is against the manifest weight of the evidence as the appellee failed to prove the `purposely' element beyond a reasonable court."
 {¶ 18} Calwise challenges his convictions for the aggravated murder of Lashawnda and her unborn child, a violation of R.C. 2903.01(B). He alleges that Anderson committed the murders and the weight of the evidence does not support the conviction that he aided and abetted in these crimes, a violation of R.C. 2923.03(A)(2). He further claims that the evidence does not support his conviction for the termination of Lashawnda's pregnancy because he did not know that she was pregnant. The arguments in reference to each victim will be addressed separately.
 STANDARD OF REVIEW {¶ 19} When reviewing a claim that the judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins (1997),78 Ohio St.3d 380, 390. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Martin, 20 Ohio App.3d 172.
 LASHAWANDA {¶ 20} Aggravated murder is defined in R.C. 2903.01(B) which in essence states that no person shall purposely cause the death of another or the unlawful termination of another's pregnancy while committing or attempting to commit aggravated robbery or robbery. It is uncontroverted that Anderson shot and killed Lashawnda which also resulted in the death of her unborn child. As such, for Calwise to be found guilty of aggravated murder, evidence must be shown that Calwise aided and abetted Anderson in the commission of the robbery.
 {¶ 21} R.C. 2923.03(A)(2) states that no person acting with the kind of culpability required for the commission of an offense shall aid and abet another in committing the offense. The mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was aiding and abetting. State v. Johnson,93 Ohio St.3d 240, 243, 2001-Ohio-1336, citing State v. Widner (1982),69 Ohio St.2d 267, 269. Aiding and abetting is assisting or facilitating in the commission of a crime or promoting its accomplishment. Johnson,2001-Ohio-1336, quoting Black's Law Dictionary (7 Ed. Rev. 1999) 69. Intent is inferred from the circumstances surrounding the crime. Id.
 {¶ 22} Calwise was more than a mere presence in this robbery. Anderson asked Calwise to help him rob Casey. (Tr. 400). Calwise agreed to help perform the robbery. (Tr. 401-402). Calwise went to Casey's house with a loaded weapon with the intention of robbing Casey. (Tr. 429). Calwise testified that he would have possibly used the gun on Casey. (Tr. 429). Calwise admitted in a robbery people can get hurt and even killed. (Tr. 457, 532). Calwise admitted that when he arrived at the house, Casey was not there, but Calwise and Anderson still proceeded to go into Casey's home with loaded weapons. (Tr. 410-412). Calwise admitted that once Anderson started talking to Lashawnda that he knew that Anderson wanted drugs and money, and that Anderson was trying to get them from Lashawnda. (Tr. 458). Calwise looked through the kitchen cabinets during and after the killing of Lashawnda and her unborn child. (State's Exhibit 31). Calwise left the house with Anderson after the murders had occurred. (Tr. 436). Calwise received $1,000 from the robbery. (Tr. 442). This testimony and evidence indicates that the jury's verdict was not against the manifest weight of the evidence.
 {¶ 23} Calwise additionally argues that the proceeds of the robbery and the murders did not occur at the same time. He alleges that after the murders both he and Anderson left the house without taking any money or property. (Tr. 438-440). He claims that he and Anderson returned to the home later and Anderson took money and a gun. (Tr. 440-441). Despite his contention, the fact that the robbery may not have transpired at the same time of the murders does not negate the ability of the jury to convict Calwise of the crimes. The language of R.C. 2903.01(B) states that a person cannot purposely cause the death of another or unlawfully terminate another's pregnancy while committing or attempting to commit an aggravated robbery. It could be concluded that Calwise was attempting to commit a robbery while the shootings were occurring. Calwise was looking through the kitchen cupboards with one hand while he carried his gun in the other hand. (State's Exhibit 31). Even though Calwise's search of the kitchen was not successful, it was still (at the very least) sufficient to be categorized as an attempted robbery.
 {¶ 24} Furthermore, even if Calwise and Anderson left the house after the murders occurred without any money or property and then later returned to the house and took money and property, the murders occurred during the commission of a robbery. The victim of a robbery, killed prior to the robber taking the property is still the victim of an aggravated robbery. State v. Rojas (1992), 64 Ohio St.3d 131, 139, citing State v.Smith (1991), 61 Ohio St.3d 284, 290. "A robber cannot avoid the effect of the felony murder rule by first killing a victim, watching her die and then stealing her property after the death." Smith,61 Ohio St.3d at 290. In Rojas, it is alleged that the defendant killed the victim then three hours later took her property. The Court stated that the defendant intended to steal the property while the victim was alive, therefore, it is of no consequence that the defendant took the property after the victim had died. Rojas, 64 Ohio St.3d at 139. Calwise's action of looking through the kitchen with his loaded gun, could allow the jury to conclude that he had the intent to commit robbery. As such, there was sufficient evidence for the jury to conclude that Calwise aided and abetted in the murder of Lashawnda.
 TERMINATION OF PREGNANCY {¶ 25} Calwise claims that he had no actual knowledge that Lashawnda was pregnant. Therefore, he could not be guilty of aiding and abetting in the termination of her pregnancy. The state argues that there is no requirement that an accomplice must know the specific identity of the victim prior to the murder. Since case law on an accomplice's guilt during the commission of unlawful termination of a pregnancy is nonexistent, the state analogizes the situation at hand to an Ohio Supreme Court case that upheld the conviction of an accomplice that was the driver of the getaway vehicle who was not present during the murder and did not know the identity of the victim. State v. Lockett (1976),49 Ohio St.2d 48 (reversed in part). Under the state's analysis if a person robbed a store and in the process of robbing that store a pregnant woman was killed, the accomplice who agreed to the robbery but did not know the woman was pregnant would be guilty of aiding and abetting in the unlawful termination of a pregnancy.
 {¶ 26} We find the state's reasoning persuasive. The situation is similar to an egg-shell plaintiff theory; you take the victim as you find them. It is a risk the offender takes that when a woman is killed, the offender may be guilty of two deaths if the victim is pregnant regardless of whether the offender has knowledge of the pregnancy.
 {¶ 27} Under R.C. 2903.01(B) the elements required to prove murder are also the elements required to prove the unlawful termination of another's pregnancy. As stated above, we hold that Calwise's conviction for aiding and abetting in the aggravated murder of Lashawnda was not against the manifest weight of the evidence because of Calwise's actions before, during and after the murder prove the requisite elements in R.C.2903.01(B) and R.C. 2923.03(A)(2). In accordance with that holding and our above analysis that the offender does not need to know the identity of the victim to be guilty of murder, Calwise's conviction for aiding and abetting in the unlawful termination of Lashawnda's pregnancy is also not against the manifest weight of the evidence. Therefore, these assignments of error are without merit.
 ASSIGNMENT OF ERROR NO. THREE {¶ 28} "Appellee failed to adduce sufficient evidence at trial to establish appellant was the principal offender in the aggravated murder of Deshun Morland."
 STANDARD OF REVIEW {¶ 29} In viewing a sufficiency of the evidence argument, "the relevant inquiry is whether after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."State v. Jenks (1991), 61 Ohio St.3d 259. Whether or not the state presented sufficient evidence is a question of law dealing with adequacy.Thompkins, 78 Ohio St.3d 380.
 ANALYSIS {¶ 30} Calwise argues that sufficient evidence was not produced to prove beyond a reasonable doubt that he killed DeShun. He claims that because the coroner could not conclusively testify that the shot fired by Calwise actually caused the death of DeShun, Calwise cannot be the principal offender.
 {¶ 31} DeShun had three gunshot wounds. These gunshot wounds occurred to the left side of DeShun's head. (Tr. 346.) Two of the gunshot wounds caused hemorrhaging and brain swelling. (Tr. 346). The other gunshot wound only caused hemorrhaging. (Tr. 349). The deputy coroner testified that all of the gunshot wounds contributed to the death of DeShun. The deputy coroner could not tell which gunshot wounds were caused by Anderson's gun and which gunshot wound was caused by Calwise's gun. He explained that hemorrhaging associated with each of the three bullet paths indicated that DeShun was alive at the time of all three injuries. (Tr. 349). The gunshot wound that only caused hemorrhaging was not a fatal gunshot wound, but it contributed to the death. (Tr. 350). Calwise testified that he shot DeShun once at close range allegedly in the neck area. (Tr. 432, 500; State's Exhibit 31). He alleges that his shot was the shot that only caused hemorrhaging.
 {¶ 32} As stated earlier, aggravated murder occurs when a person purposely causes the death of another. R.C. 2903.01(A). A jury may find an intention to kill where the natural and probable consequence of a defendant's act is to produce death. State v. Clark (1995),101 Ohio App.3d 389, 405. Shooting a person in or near the head is likely to produce death. Widner, 69 Ohio St.2d at 270 (using a gun in the commission of an offense is likely to produce death).
 {¶ 33} Sufficient evidence existed for a jury to find that Calwise was a principal offender causing the death of DeShun. The "principal offender" means the actual killer, but does not necessarily mean the "sole" offender. State v. Stojetz (1999), 84 Ohio St.3d 452, 458. This leads to the conclusion that there can be more than one principal offender, since there can be more than one actual killer. Id. citingState v. Keene (1998), 81 Ohio St.3d 646, 655. Even if the jury believed that Calwise shot the bullet that caused only hemorrhaging, the deputy coroner testified that DeShun was alive during all three shots and that all of the shots contributed to DeShun's death. (Tr. 350, 355). InKeene, the coroner's testimony was very similar to the testimony above in that the coroner stated that the victim might have been "barely alive" immediately following Keene's shot and that the combination of both defendants' shots could have caused the death. Keene,81 Ohio St.3d at 655.
 {¶ 34} Under this assignment of error, Calwise directs this court's attention to the fact that the penalty phase jury verdict forms in this case have never been properly filed and made a part of the record. Calwise's allegation appears to be accurate. We were unable to locate these jury verdict forms. However, the transcript reveals that the penalty phase jury verdict forms did exist at one time as indicated by the fact that the trial court read these forms into the record. (Mit. Hrg. Tr. 417-418). Counsel reviewed these forms and made no objections. (Mit. Hrg. Tr. 421). Moreover, at the sentencing hearing and in the sentencing journal, the trial court specifically referred to the jury verdict forms. (Mit. Hrg. Tr. 430-432; 3/16/00 J.E.). As a result, the failure to file and record the verdict forms is not reversible error. We agree with the Second District Court of Appeals which stated that, "[t]he filing of such forms is a ministerial act and, however important, it does not affect a substantial right when the otherwise perfect record of the proceedings at trial and the final judgment fully disclosed the delivery and acceptance without objection of valid verdicts by the jury." Statev. Clark (Jan. 6, 1987), 2d Dist. No. CA9722. As such, this argument fails.
 {¶ 35} In viewing the evidence in the light most favorable to the state, it appears that the state provided sufficient evidence to prove the essential elements of the offense. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NO. FIVE {¶ 36} "The appellant's trial counsel were ineffective in their representation of appellant by failing to object to appellant's charge of unlawful termination of a pregnancy without appellant having actual knowledge the victim was pregnant and failing to call important, necessary witnesses in his case in chief, thereby violating appellant's constitutional guarantees under the Sixth Amendment of the United States Constitution which prohibited appellant from receiving a fair trial and affected the outcome of appellant's trial to his prejudice."
 {¶ 37} Calwise claims that trial counsel was ineffective for three reasons. First, he claims trial counsel failed to object to Count Three, unlawful termination of a pregnancy, in the indictment. Second, he claims that trial counsel failed to call witnesses whose testimony would have supported his version of the alleged crimes. Finally, he claims that original trial counsel failed to file his notice of appeal within the time limits.
 {¶ 38} We start out by noting that a reviewing court must initially embrace the presumption that the conduct of trial counsel falls within the wide range of reasonable professional assistance. State v.Thompson (1987), 33 Ohio St.3d 1, 10. That presumption is eroded pursuant to a two prong test to determine if counsel was ineffective. Stricklandv. Washington (1984), 466 U.S 668, 686; Thompson, 33 Ohio St.3d at 10. The first prong requires the defendant to show that counsel's performance was objectively deficient by producing evidence that counsel acted unreasonably. Strickland, 466 U.S. at 687; State v. Sallie (1998),81 Ohio St.3d 673, 674. The second prong requires the defendant to show that counsel's error was so serious as to deprive the defendant of a fair trial or a reasonable probability that the result of the trial would be different. Strickland, 466 U.S. at 687; Thompson, 33 Ohio St.3d at 10;Sallie, 81 Ohio St.3d at 674.
 {¶ 39} Here it is not clear that the actions of trial counsel were unreasonable or resulted in error that prejudiced Calwise. Trial counsel did not err by failing to object to the indictment concerning the charge about unlawful termination of a pregnancy. This is so primarily because of our disposition of assignment of error number four wherein we concluded that enough evidence was produced and existed to support this charge. Therefore, the failure of trial counsel to object to count three of the indictment was not error.
 {¶ 40} Also, trial counsel was not deficient in failing to call Prieto and Brea to testify on Calwise's behalf. Failure to call a witness is a decision concerning trial strategy. State v. Reese (1982),8 Ohio App.3d 202. A reviewing court should decline from second-guessing an attorney's trial strategy. State v. Carter (1995), 72 Ohio St.3d 545,558. This is especially the case where the purported testimony of a person who was not called to testify is based solely on the conjecture of the appellant.
 {¶ 41} Calwise claims that Prieto would have testified that the plan was to rob Casey outside of the home, not to cause any harm to Lashawnda, DeShun or Brea. This is Calwise's conjecture as to what Prieto would testify to. However, Prieto was the person who supplied the gun for Calwise to use and he was the getaway driver. (Tr. 405, 408-409, 435-436). From this information alone it is reasonable to conclude that Prieto may have done nothing other than invoke his Fifth Amendment privilege. As such, we are unable to conclude that trial counsel acted objectively unreasonable by failing to call Prieto as a witness.
 {¶ 42} At the time of trial Brea was about four years old. A competency hearing was conducted prior to trial. The trial court found, over defense counsels' objection, that Brea was competent to testify. However, the state decided it did not wish to call Brea as a witness. The record is devoid of any indication of what Brea's testimony would establish. Calwise argues that Brea's testimony would have cleared up the inconsistencies between Calwise's video statement and his trial testimony. Calwise further maintains that in her statement, Brea never mentioned that Calwise shot anyone. Again, however, this is merely conjecture as there was nothing to indicate what the testimony would have been.
 {¶ 43} However, even if it was objectively unreasonable for trial counsel to fail to call Brea and Prieto to testify, and even if their testimony would have been as envisioned by Calwise, this failure did not prejudice Calwise. The fact remains that there is not a reasonable probability that the result of the trial would have been different. Calwise stated that he shot DeShun once. Calwise also stated that he agreed to perform the robbery. Calwise stated he went into Casey's house with a loaded gun knowing that Casey was not home. Calwise testified that he looked through the kitchen cabinets. All of this information was stated both in the video statement and testified to by Calwise at trial. There were no inconsistencies in this information. There is no indication that Brea's or Prieto's testimony would have changed or altered this information.
 {¶ 44} Lastly, Calwise argues that if the previous two reasons were not enough to establish ineffective assistance of counsel, that those reasons taken in conjunction with trial counsel's failure to file the notice of appeal on time, indicates that trial counsel was ineffective. The notice of appeal was filed beyond the time allowed for by the appellate rules. However, this court allowed a delayed appeal. As such, prejudice did not result from trial counsel's failure to file a timely notice of appeal. Furthermore, having already found that the previous two arguments did not display that either trial counsel acted objectively unreasonable or that the alleged errors resulted in prejudice to Calwise, the untimely notice of appeal does not per se establish that those actions resulted in ineffective assistance of trial counsel. As such, this argument fails.
 CROSS ASSIGNMENT OF ERROR NO. ONE {¶ 45} "The trial court erred when it denied the state in the mitigation portion of the trial the right to present both the opening and closing argument in final summation."
 {¶ 46} In the penalty phase, Calwise requested that he be allowed to open and close during the final argument. The trial court granted this request over the state's objection. The state claims that this was error and this appellate court must reverse the trial court's decision.
 {¶ 47} R.C. 2945.10 dictates the order of a trial. Section (F) specifically states that the state shall have the opening and closing of final arguments. However, the final sentence of R.C. 2945.10 states that the court may deviate from the order of proceedings.
 {¶ 48} Previous Ohio Supreme Court cases have held that the state is allowed to open and close final arguments in the penalty phase of a capital trial. State v. Coleman (1989), 45 Ohio St.3d 298, 309; State v.Rogers (1985), 17 Ohio St.3d 174, 182-183 (vacated by the United State Supreme Court on different grounds but later reaffirmed by the Ohio Supreme Court in 28 Ohio St.3d 435); State v. Jenkins (1984),15 Ohio St.3d 164, 215. It does not violate a defendant's constitutional right by permitting the state to open and close in final arguments in the penalty phase. State v. Grant (1993), 67 Ohio St.3d 465. While the defendant has the burden of going forward with mitigation evidence, the state still has the burden of persuasion and must prove that the aggravating factors outweigh the mitigating factors. Rogers,17 Ohio St.3d at 183. As such, the state should have the opportunity to open and close final arguments. Id.
 {¶ 49} Despite this, the trial court is granted the discretion to deviate from the statutory procedure as long as the rights of the accused are not jeopardized. Jenkins, 15 Ohio St.3d at 215. However, the defendant should not control the trial court's discretion by insisting on procedures he thinks would give him a better chance of minimizing the punishment he might receive. Id.
 {¶ 50} In the case at bar, the trial court acknowledged that it had the discretion to grant Calwise's request and also that the state is entitled to open and close the final argument. (Partial Tr. of Proceedings 3, 4). However, the trial court stated it would grant Calwise the advantage to present his case in mitigation after having been found guilty of all charges and specifications against him. (Partial Tr. of Proceedings 4). The mitigation hearing was not altered in any other way.
 {¶ 51} Here, the trial court used its discretion to deviate from the procedural order set forth in R.C. 2945.10. However, it cannot be concluded that the trial court clearly abused its discretion by granting Calwise greater latitude in the penalty phase of his sentencing hearing.Grant, 67 Ohio St.3d at 479. While this situation may be a close call, in the final analysis we will not substitute our decision for that of the trial court. Therefore, the trial court did not abuse its discretion in allowing Calwise to open and close final arguments.
 {¶ 52} Even if it could be stated that the trial court abused its discretion, reversing and remanding for a new sentencing hearing will not allow the state to impose the death penalty even if a jury concludes that death should be the punishment. In Ohio, the jury which finds a capital defendant guilty of aggravated murder and the specification must be the same jury that determines the penalty. Carter, 72 Ohio St.3d at 559;Coleman, 45 Ohio St.3d at 309.
 {¶ 53} "When an appellate court reverses a death sentence recommended by a jury and remands the cause for resentencing, the death penalty may not be reimposed on remand. * * * R.C. 2929.03(D) requires that any death sentence be recommended by `the trial jury' in Penix, we held that `the trial jury' is `the same jury that convicted the offender in the guilt phase.'" State v. Keenan (1998), 81 Ohio St.3d 133, 140, quoting State v. Penix (1987), 32 Ohio St.3d 369, 373. As such, the death penalty could only be sought when the case is remanded for a new trial.Keenan, 81 Ohio St.3d at 140.
 {¶ 54} Accordingly, if we remand this case for resentencing the state will not be able to obtain any higher sentence than that already imposed upon Calwise. Calwise received three life sentences without the possibility of parole. The death penalty is the only sentence that is greater than the one he received. Regardless, it cannot be stated that the trial court abused its discretion in allowing Calwise to open and close the final argument. This argument is without merit.
 {¶ 55} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Judgment affirmed.
Donofrio and DeGenaro, JJ., concur.